## BUCK *vs.* BINNINGER.

Upon a *certiorari* sued out under the statute authorizing summary proceedings to recover the possession of land, the supreme court has a right to look into the return, for the purpose of examining any adjudication made by the officer before whom the proceedings were had, and to decide the case upon its merits. The authority of the court is not limited to questions of jurisdiction, and regularity.

Proceedings under that act cannot be instituted by a person who is merely the owner of the reversion, expectant on the termination of the estate of the tenant for life, who is in the actual possession of the premises, against a tenant to whom the petitioner has assumed to let the same

A subsequent grantee in fee of premises previously leased to another person for life, is bound by the covenant for quiet enjoyment contained in the lease to the tenant for life; and cannot institute any proceedings incompatible with the quiet enjoyment of the premises by the tenant for life. He therefore cannot maintain against a third person proceedings to recover possession of the land, the effect of which would be to remove the tenant for life from the premises.

The covenant for quiet enjoyment, contained in a lease of land for life, is a covenant running with the land; and a subsequent grantee of the premises in fee, from the lessor, succeeds to the rights and liabilities of the lessor, and is bound to guaranty to the tenant for life the quiet enjoyment of the premises.

A petition under the act respecting summary proceedings to recover the possession of land should state that the petitioner was the owner of the premises, or entitled to the possession thereof, at the time of his demise to the defendant. It should also state that the petitioner let the premises to the defendant, or that he was the landlord of the defendant with respect to the premises of which the possession is sought to be recovered. Otherwise it will not justify the proceedings before the officer.

THIS was a certiorari to a judge of the late court of common pleas of Washington county, under the act relative to summary proceedings to recover the possession of land. (2 *R. S.* 511, 516, § 47.) The certiorari was sued out on the instance of the tenant, against whom the judgment of the court below was rendered, and from the return it appears that on the 2d of April, 1845, Binninger presented a petition in writing addressed to the judge, stating "that Jehiel Buck is a tenant of all and singular the farm situate in Jackson, in the county of Washington, called the Gainer farm, being the farm formerly owned

by Edward Gainer of said Jackson, and on which he now resides, for the term of one year, commencing in the month of April, 1844, and ending on the last day of March, 1845, and which said Jehiel Buck holds over and continues in possession of said premises without the permission of the said applicant *who is his landlord,* wherefore he prays a summons," &c.   The petition was verified by the affidavit of Binninger, stating " that the above application is true in substance and matter of fact." On the return of the summons the defendant appeared and moved to quash the proceedings, on these grounds, 1st. That the application was not an affidavit within the meaning of the statute.   2. That no demise was averred in the application or affidavit.   3. That it was only stated by way of implication that Buck was the tenant of Binninger, or that Binninger was his landlord.   The judge overruled these objections; whereupon the defendant filed with the judge an affidavit in writing, duly sworn to before the said judge, in which he denied that he held over the said premises, or any part thereof, as tenant of Binninger; or that the relation of landlord and tenant ever existed or then existed between them, of said premises, or any part thereof.   He denied that he held over and continued in the possession of said premises, or any part thereof, after the expiration of any term therein as alleged in the application of Binninger, or that Binninger ever rented the said premises, or any part thereof, to the defendant, as was alleged by Binninger in his application.   The affidavit then stated that Binninger was not entitled to the possession of the said premises, or any part thereof, but that Edward Gainer was entitled to the possession thereof under a lease executed by John Gainer and wife to the said Edward and wife, for and during their lives and the life of the survivor, bearing date the 10th of August, 1833, duly acknowledged and recorded.   That at the time of making said life lease John Gainer owned the premises in fee, and was in possession, which possession he transferred to said Edward Gainer, who held the premises under said lease previous to and on the 2d April, 1845, and that he still held the same under such lease; that the said Isaac Binninger was bound to

fulfil the covenants in said lease, one of which was that Edward Gainer should quietly enjoy the premises during his lifetime.   The defendant also denied that he had been in possession of said premises since the last day of March, 1845, but stated that the same had been in possession of said Edward Gainer.   The defendant further said, that on the 1st of April, 1843, he and said Binninger entered into an agreement, under their hands, whereby Binninger let to defendant said farm to work on shares, for one year from that date ; and again on the 12th of April, 1844, defendant and Binninger made an agreement by parol, whereby said Binninger let to the defendant said farm to work for one year from that date on shares; that by the last mentioned agreement one quarter of the proceeds of the farm was to be paid to Edward Gainer, who resided thereon, and one quarter to Binninger, and the defendant was to have the rest.

A venire was issued, and the cause was tried on the 15th of April, 1845, before the judge and a jury.   Whereupon the plaintiff gave in evidence a deed in fee from John Gainer and wife to Binninger, for the premises in question, duly acknowledged and recorded, dated January 28, 1843.   The plaintiff then gave in evidence an instrument in writing, without seal, signed by Binninger and the defendant, by which the defendant was to occupy the premises one year from 1st of April, 1843, to April 1, 1844, and pay the plaintiff a share of the proceeds of the farm.   This was objected to because 1st. It was not a lease, but only an agreement to work the farm on shares.   2. It was not the demise set forth in the application.   The objections were overruled.   The plaintiff then proved a parol agreement between the parties, made the fore part of April, 1844, whereby the defendant was to work the Gainer farm and give the plaintiff one-quarter of the proceeds for the ensuing year.   The defendant agreed to occupy in that way and quit on the 1st day of April, 1845.   The defendant was to have three-quarters of the proceeds, and to clear the plaintiff from all expenses of Edward Gainer.   The plaintiff was to furnish a quarter of the

seed. The plaintiff then proved that the defendant still continued to reside on the premises, and rested.

The defendant then moved that the proceedings be dismissed, on the grounds 1. That no demise of the premises was shown as stated in the application, and if there was any tenancy it was at will and required a notice to quit. 2. That the relation of landlord and tenant did not exist. 3. That the parol agreement was never completed, and a demand of the premises should have been shown. The motion was denied. The defendant then gave in evidence a lease from John Gainer and wife to Edward Gainer and wife, dated August 10, 1833, of the said premises during their natural lives and the life of the survivor, for one cent annual rent, which lease was acknowledged and recorded August 27, 1833. It was then shown that Edward Gainer had resided on the premises ever since the date of said lease in 1833; that he was an old man, 92 years of age; that different tenants had occupied the premises, residing with, and taking care of Edward Gainer; among whom was the defendant. That Edward Buck, a son of the defendant, in March, 1845, made a written contract with Edward Gainer to carry on the farm as agent for him during the ensuing year, and was then on the place, living with his father the defendant, and Edward Gainer. That he was to work the farm under Edward Gainer's directions; and that he and the defendant both had foddered cattle on the place that spring.

The testimony being closed, the counsel for the defendant moved for a nonsuit on these grounds; 1st. That the covenant for quiet enjoyment and warranty in the lease from John Gainer and wife to Edward Gainer and wife, dated August 10, 1833, was binding on the plaintiff, he being the grantee of the lessor John Gainer, and the covenant running with the land; and that if the jury believed Edward Gainer was in possession he could not be removed. 2. Not material to be here noticed. 3. That the defendant having taken the farm to work on shares, was not such a tenant as could be removed by those proceedings.

The judge, in his charge, did not in terms respond to either of these propositions, but must be considered as overruling the

Buck *v.* Binninger.

2d and 3d, for he charged in substance, amongst other things, that the main question was whether the defendant was the tenant of the plaintiff, of the Gainer farm, from April 1, 1844, to April 1, 1845. 2. That if he was such tenant the next question was whether he held over his term without permission of Binninger. On the first question he charged that if the proof made out the tenancy, which he intimated it did, the defendant was estopped from disputing the title of his landlord, by showing title in Edward Gainer, and was bound to yield up the possession to his landlord, and could not attorn to Edward Gainer or any third person. The jury found a verdict for the landlord; and the judge issued his warrant to the sheriff requiring him to remove all persons from the premises in question, and to put the said Isaac Binninger into the full possession thereof.

*Jas. Gibson,* for the plaintiff in error. I. The motion made by the defendant below, on the return of the summons, to quash the proceedings, should have been granted, because, (1.) The "*application*" was not " on oath of the facts," within the meaning of the statute. (2 *R. S.* 513, § 29.) It is merely an application stating his grounds for the proceedings. It is neither *signed* by him nor *verified* as required by the statute. (2.) There is no " oath in writing of the facts" as required by section 29. The only oath made is that the " application is true"— now the application is to remove the tenant, and probably is true, but is not what the statute requires. (*Hill* v. *Stocking*, 6 *Hill,* 314.) These summary proceedings being in derogation of the common law, are open to technical objections, and the officer must show a strict compliance with the statute at every step. (*Farrington* v. *Morgan,* 20 *Wend.* 207.) But admitting there were a legal " oath of the facts," still it is claimed that the facts stated are not enough to sustain these proceedings. It is only alleged in the application, by way of *recital,* that Buck is a *tenant* at all ; and it is no where alleged that he is *tenant* to the applicant. But even if positively stated in the application, the affidavit annexed is not so drawn as to verify those *facts,* but only verifies the *truth* of the *application.*

To show the strictness of the courts in regard to these affidavits, see *Camp* v. *McCornick*, (1 *Denio*, 641,) and cases there cited, and note *a* at page 644. There is no *demise* averred in the affidavit or application. The statute requires that the facts which entitle the party to remove the defendant. should be stated. In order to comply with this statute, he must make out a sufficient case, and in the words of the court in *Hill* v. *Stocking*, before cited, he must " make out a plain case." *Some demise*, from *some person* to the defendant, was absolutely essential to create a tenancy. If it existed, it should have been stated ; and if it did not exist, these proceedings should be reversed. It is only stated by way of implication that the defendant is the plaintiff's tenant, or that the plaintiff is his landlord. The affidavit should have shown how he became tenant, and to whom and how the plaintiff became landlord. It is like the affidavit in *Hill* v. *Stocking*, where the landlord swore that he " became possessed of the lease *legally*." But here the plaintiff has not even favored us by saying that he became our landlord " legally." In the case cited, the court held that the affidavit must state how the plaintiff became landlord, and set forth the facts which make out that relation ; holding that " unless this is required, the occupant may be turned out of possession by a stranger."

The agreement to work the farm on *shares* for the previous year, should have been rejected. The whole question was whether there was a taking of the farm for the *second year ;* and proving that the defendant took it for the year previous is no evidence of a hiring for the second. It cannot be claimed that the defendant continued under that lease, because the plaintiff in these proceedings has claimed throughout on the alleged ground of a letting for the second year ; and even if the defendant did continue under that agreement, it would create a mere tenancy at will, and would require notice to quit.

II. The motion of the defendant below *to dismiss* the proceedings should have been granted, because, (1.) There was no *demise* shown by the plaintiff to the defendant for a *specific time*, as alleged in the plaint ; or that it expired *on* the last day

of March, 1845 ; or that the defendant held over after the expi-
ration of any term.    That it did not expire *on* the last day of
March, 1845, see the case of *Wilcox v. Wood,* (9 *Wend.* 346,)
in connection with the evidence of Luther B. Wood.    The con-
tract as proved varies one day from the time alleged in the
plaint.    (2.) There does not appear to have been any agree-
ment executed or completed between the parties for the last
year.    It was a mere executory agreement for a lease.    No
writings were executed in pursuance of the *verbal agreement ;*
and if the relation of landlord and tenant ever existed, it was a
mere tenancy at will, and required notice to quit.    (*Hegan v.
Johnson,* 2 *Taunt.* 148.    *Anderson v. Prindle,* 23 *Wend.* 616.)
But this agreement for a lease, being by parol, was *void* within
the statute of frauds.    If otherwise, it was executory, and con-
ferred no interest in the lessee.    (*Prindle v. Anderson,* 19 *Id.*
393.)  (3.) But admitting the evidence shows an agreement
completed, it was an agreement to "*occupy and work*" the
farm on shares, and does not create the relation of landlord and
tenant—such an agreement creates the relation of tenant in
common.    (*Rich v. Penfield,* 1 *Wend.* 384.    *Oakley v. Schoon-
maker,* 15 *Id.* 226.    *Caswell v. Dietrich,* 15 *Id.* 379.    *Put-
nam v. Wise,* 1 *Hill,* 234.    *Hare v. Coley, Cro. Eliz.* 143.
7 *New Hamp. Rep.* 306, 308.    *Maverick v. Lewis,* 3 *Mc-
Cord,* 211.)

Again, says Savage, Ch. J., in *Oakley v. Schoonmaker,* be-
fore cited, the "strict conventional relation of landlord and ten-
ant must exist" to sustain these proceedings.    And in *Evertson
v. Sutton,* (5 *Wend.* 281,) this statute is held to be applicable be-
tween landlord and tenant *only.*   No such relation existed between
these parties.    The whole proceedings from beginning to end
have been without jurisdiction and are void.    (*Roach v. Cozine,*
9 *Wend.* 227.    *Haywood v. Miller,* 3 *Hill,* 90.)   The evidence
on the part of the defendant below shows a sufficient defence,
because : The plaintiff was not entitled to possession of the
Gainer farm.    The right of possession was in Edward Gainer,
under the lease from Jno. Gainer.    The lease had been record-
ed, he had been long in possession under it, and the plaintiff

had constructive and *actual notice* of it: and the defendant offered to show that he purchased subject to that lease. Thus the plaintiff was liable to Edward Gainer, the former being assignee of the lessor, for the quiet possession of the premises. Edward Gainer's interest was not affected by his lessor's giving a deed. (*Rickert* v. *Snyder*, 9 *Wend.* 416.) The covenant of quiet enjoyment in the lease ran with the land. (*Lametti* v. *Anderson*, 6 *Cowen*, 308, per *Savage*, *Ch. J.* See also *Norman* v. *Wells*, 17 *Wend.* 136; `also at page 159, where *Cowen*, *J.*, cites *Gray* v. *Cuthberson*, 2 *Chitty*, 482. See also 17 *Wend.* 149.) That this covenant runs with the land, see *Hunt* v. *Amidon*, (4 *Hill*, 345.)

Again, the plaintiff is *estopped*, being a privy of the lessor, from committing a breach of this covenant by these summary proceedings. (*Jackson* v. *Waldron*, 13 *Wend.* 187, per *Ch. Jackson* v. *Bull*, 1 *John. Cas.* 90. *Jackson* v. *Stevens*, 16 *John. Rep.* 110. *McCracken* v. *Wright*, 14 *Id.* 193. 1 *Salk.* 276. 4 *Peters*, 1. *Co. Lit.* 47. *Dyer*, 256. *Plow.* 344.)

The proceedings were irregular and oppressive, and without jurisdiction, and should be reversed.

Justice Bronson, in *Hill* v. *Stocking*, (6 *Hill*, 318,) says: "These summary proceedings must be carefully watched, or they will be turned into the means of working injustice and oppression." In answer to the grounds of defence and the authorities cited to support them, it is insisted that the new doctrine of the supreme court refusing to examine these summary proceedings on the merits, has been repudiated in the court of errors. (*Anderson* v. *Prindle*, 23 *Wend.* 616. *Niblo* v. *Post's Adm'rs*, 25 *Id.* 280.) In regard to *Jackson* v. *Brownell*, (1 *John. Rep.* 267,) cited by the plaintiff, it is sufficient to say, that it has been distinctly overruled by *Caswell* v. *Dietrich*, (15 *Wend.* 379;) and *Putnam* v. *Wise*, (1 *Hill*, 234.) The proceedings should be reversed, and restitution awarded, with costs.

*C. L. Allen*, for the defendant in error. The writ of certiorari, when issued for the purpose of enabling this court to exercise its supervisory power over inferior tribunals, removes nothing

but the record. The court can go no further than an examination whether the inferior tribunal has kept within its jurisdiction. The only questions that can be discussed on the return are those which relate to jurisdiction, regularity of the proceedings, or questions of law which arise on the face of the record and of the proceedings and orders which are in the nature of records. This is the utmost latitude of inquiry. (5 *Hill*, 18. *Birdsall* v. *Phillips*, 17 *Wend.* 464. *Allen* v. *Com'rs of Schodack*, 19 *Id.* 342. *Prindle* v. *Anderson, Id.* 391. *Simpson* v. *Rheinlander*, 20 *Id.* 103. *Johnson* v. *Moss, Id.* 145. *Willson* v. *Green, Id.* 189. *Ex parte The Mayor, &c. of Albany*, 23 *Id.* 277. *Stone et al.* v. *The Mayor, &c. of New-York*, 25 *Id.* 157. 2 *Hill*, 9, 14.) The affidavit of the landlord, Binninger, was sufficient to give the judge jurisdiction of the cause, and contained all the statute required. (2 *R. S.* 512, 513.) It was objected, before the officer who entertained the proceedings, that it was not an affidavit, within the meaning of the statute. The legal and the English definition of the word " affidavit" are the same; it signifies " *an oath in writing*," the words used in the statute. The application of the landlord was " *an oath in writing*," and therefore directly within the meaning of the statute. It was objected that no demise was averred in the application or affidavit. A demise is averred, in the affidavit, of the " *Gainer farm for the term of one year commencing in the month of April*," &c. It was also objected that it only stated by way of implication, that Buck was the tenant of Binninger, or that Binninger was his landlord. Binninger swears expressly that " *Jehiel Buck holds over and continues in possession of the said premises without the permission of the said applicant who is his landlord.*" The relation of landlord and tenant is here distinctly and unequivocally stated. It is not vague or uncertain language; it is not stated by way of implication, but positively sworn to. But were this otherwise, by way of implication would be enough. The rule of construction is laid down by Justice Cowen, in *Prindle* v. *Anderson*, (19 *Wend.* 369,) as follows: " We are not, in the nature of this proceeding, to expect or to exact technical accuracy and fulness

in the statement of the plaintiff's case. A special demurrer is not applicable, but he must at least present by his affidavit such facts as will enable us to infer argumentatively, and upon just rules of construction, a substantial case." The subsequent proceedings were all regular; and no error appearing upon the record the proceedings should be affirmed. But if the court looks beyond the record the case is clearly with the landlord.

WILLARD, J. The first statute which authorized summary proceedings, on the part of the landlord, to remove his tenant for non-payment of rent, or for holding over after the expiration of his tenancy, without the consent of his landlord, was passed April 13, 1820. (*Laws of* 1820, *p.* 176.) That statute made no provision for reviewing the proceedings by this court; thus leaving this court with no other than its common law powers, of re-examining the process and proceedings before the magistrate by the common law certiorari. In *Lynde* v. *Noble*, (20 *John.* 80,) the supreme court held that such certiorari would not lie until the case had been finally tried, and judgment given thereon, and that then it would not suspend the writ of restitution or possession. And in *Nichols* v. *Williams*, (8 *Cowen*, 13,) it was held that the certiorari never brings up the testimony given before the tribunal to which it is directed, except when it goes to a justice's court. Its office is merely to remove the record, of which the testimony is no part. It was held, also, in that case, that the judge had no power of adjournment in such cases. The power to require the return of the testimony, &c. by a justice to a certiorari, was given by statute, and the proceedings under it are familiar to the profession.

The revised statutes (*vol.* 2, *p.* 511) made essential alterations in the act relative to summary proceedings to recover the possession of lands, among which are the power to compel the attendance of witnesses before the judge, and the adjournment of the proceedings on the application of either party, and the awarding of costs to the prevailing party on certiorari. But the most important change is that embraced in the 47th sec-

Buck v. Binninger.

tion, page 516, in which it is enacted that "the supreme court may award a certiorari for the purpose of examining *any adjudication* made on any application hereby authorized." It is true the supreme court, in *Birdsall* v. *Philips*, (17 *Wend*. 464,) and *Prindle* v. *Anderson*, (19 *Id*. 391,) held that on a return to a common law certiorari, no other questions can be raised than those relating to the jurisdiction of the officer, or court, before whom the proceedings are had, and to the regularity of such proceedings. Those two cases arose under the statute in question, but it does not appear that the attention of the learned judge by whom the opinion was pronounced, had been directed to the change of phraseology in the acts. That the doctrine was laid down correctly with respect to the office of a *common law certiorari*, is abundantly shown by the cases cited by the learned judge, and the various other cases which have been cited on the present argument. But the case of *Prindle* v. *Anderson*, (*supra*,) was carried to the court of errors in 1840, and reversed. (23 *Wend*. 616.) The chancellor, who delivered the judgment of that court, puts the reversal upon the ground that by the 47th section the power of this court is necessarily enlarged, under the certiorari provided for reviewing the summary proceedings between landlord and tenant. And he considered it evident that the legislature did not intend, in these cases, to limit the powers of the court, as in the case of a *certiorari* at common law, to the mere questions of jurisdiction of the inferior tribunal, and the regularity of its proceedings; but that, on the contrary, they intended to give the supreme court full and competent power to examine, upon the merits, every decision of the judge *a quo* upon a question of law, and to affirm, reverse, or quash the proceedings, as justice should require; and also to award costs to the prevailing party, which they are not authorized to do upon a mere common law certiorari. The doctrine of this case was again affirmed by the court of errors in the subsequent case of *Niblo* v. *Post's adm'rs*, (25 *Wend*. 280.) We have therefore a right, on the return to this certiorari, to look into the return, and to decide the case upon its merits.

VOL. III. 51

Buck *v.* Binninger.

Without examining the various points that were raised on the hearing before the judge, there is one that was fatal to the application of the landlord. It appears by the testimony that he was merely the owner of the reversion expectant on the termination of the estate of Edward Gainer, the tenant for life, who was in the actual possession. Binninger was not entitled to the possession of the premises in question, until after the death of Edward Gainer. He had no right to let the place to Jehiel Buck, the defendant. He was not in possession, and was bound by Buck's covenant in the lease to Edward Gainer, for the quiet enjoyment of the latter during life. The judge, on the finding of the jury that Jehiel Buck was the tenant of Binninger, holding over after the expiration of his term, issued his warrant requiring the sheriff " to remove all persons from the premises, and to put Binninger into the full possession thereof." Edward Gainer was then in possession under his life lease, and was liable to be put out; and Binninger, who was not entitled to the possession, under his deed, until the termination of the life estate of Edward Gainer, was required to be put in possession. If this recovery can be upheld, I see nothing to prevent two strangers, without color of title, from obtaining, by collusion with each other, the possession of any man's farm.

The doctrine on which the judge seems to have relied, that a tenant cannot dispute the title of his landlord, and attorn to a stranger, was inapplicable to this case. There was a question behind it, namely, whether the landlord had any right to the possession of the premises at all. That right was put in issue by the defendant's affidavit. Binninger could not have maintained an ejectment against the defendant, during the continuance of the outstanding life estate of Edward Gainer. (2 *R. S.* 303, § 3. *Adams' Ejectment*, 29.) Much less should he be permitted to recover in this summary proceeding, which is a substitute for an ejectment. (*See Gillet* v. *Stanley*, 1 *Hill*, 121, *and Grout* v. *Townsend*, 2 *Id.* 554.) These cases show that an outstanding estate for life, in a third person, will defeat an ejectment by the owner of the reversion, without showing

any connection between the tenant for life and the defendant. (*Adair* v. *Lott*, 3 *Hill*, 182, *S. P.*)

Binninger never was in possession of the premises at all. At the time of his purchase of the reversion in January, 1843, Loring Hastings occupied the premises under a contract with John Gainer, and took care of Edward Gainer, the old gentleman, who lived on the place. It was a part of his contract that he should take care of the old gentleman. It is fairly to be inferred from the return that this life estate to Edward Gainer and wife was granted by their son John Gainer, for their support. Up to the time of these proceedings they were supported there. It seems from the verbal agreement proved between the defendant and Binninger, in the spring of 1844, that the defendant was to indemnify the plaintiff against the expense of supporting the old gentleman. He was therefore probably as much the tenant of Edward Gainer as of the plaintiff, according to the plaintiff's own showing.

Again, the covenant for quiet enjoyment in the lease from John Gainer to Edward Gainer, was a covenant running with the land. (*Spencer's case*, 5 *Rep.* 16. 17 *Wend.* 147, 159, *per Cowen, J.* 2 *Chitty,* 482. *Hunt* v. *Amidon*, 4 *Hill*, 345.) The plaintiff, under his deed from John Gainer and wife, succeeded to the rights and liabilities of John Gainer, and was consequently bound to guarantee to Edward Gainer the quiet enjoyment of the premises. He ought not to be permitted to do by the forms of law that which by contract he is bound not to do. The effect of his recovery in these proceedings against Buck, is to remove Edward Gainer from the possession of the premises in which he has a life estate. Being thus removed from the possession, the latter could maintain an action against Binninger on the covenant for quiet enjoyment, and an ejectment to regain the possession. The law, to avoid circuity of actions, will prevent Binninger from maintaining the proceedings.

I have omitted to discuss the objection to the form of the petition, arising from the omission to state that Binninger was the owner of the premises, or entitled to the possession thereof, at the time of his demise to Buck. The petition of Binninger

may be true, and he not be entitled to the possession. The application neither states that Binninger let the premises to the defendant, nor that the defendant was his tenant; except by implication. He does not state that he was the landlord of the defendant with respect to these premises.

I am satisfied the proceedings are erroneous, and that they should be reversed with costs.

HAND, J. and CADY, P. J. concurred in that part of the above opinion which decides that the affidavit on which the proceedings before Judge Howe were had, was insufficient, to uphold the proceedings. On the other questions they gave no opinion.

Proceedings reversed.

