CAROLINE L. ELY and Another, as Surviving Executors, etc., of JOSEPH FIELD, Deceased, Plaintiffs, *v.* JOHN FAHY, Defendant.

*Written lease — prior agreement merged therein — when a tenant may make repairs and charge the same to his landlord.*

Where a lease is in writing its provisions control the rights of the parties so far as relates to any negotiations had or agreements made before and at the time of its execution pertaining to the subject of the demise, as all such negotiations and agreements are deemed to have been merged in the writing.

The lessor, without an express agreement to that effect, is not bound to make repairs, nor is he chargeable for those made, but if a landlord has agreed to make

repairs and does not, a tenant, on his refusal to do so, can make them and charge the necessary expense to his landlord, or he can leave the premises and recover the damages sustained by him because of such refusal.

MOTION by the defendant, John Fahy, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the verdict of a jury directed by the court after a trial at the Monroe Circuit.

*H. F. Remington*, for the plaintiffs.

*John D. Lynn*, for the defendant.

BRADLEY, J.:

The purpose of the action was to recover a portion alleged to be unpaid of the installment due April 1, 1893, from the defendant to the plaintiffs upon a lease of store premises in the city of Rochester. The defendant alleged, by way of counterclaim, the payment by him for certain repairs upon the store, pursuant to agreement with the plaintiffs; that the payment so made should be allowed to him and applied upon the rent reserved by the lease. The plaintiffs controvert the charge of liability to him for such payment. The lease is in writing, sealed with the seals of the parties, and bears date November 12, 1889. By it the premises are leased to the defendant for the term of five years from the 1st day of January, 1890, at the annual rent of $12,000 for two years and $13,000 for the remaining three years of the term.

The testimony of the defendant is to the effect that at the time the lease was made it was orally agreed between him and the agent of the plaintiffs that a new front should be put in the store, and that it was for the purpose of paying the expense of it that the increase in the rent for the last three years of the term was made; that it was afterwards done at an expense of nearly $3,000, which the defendant paid. The lease contained no provision on the subject of repairs, other than "no permanent alterations or changes shall be permitted to the interior of said building without the written consent of the parties of the first part or their agent." There was no written consent of the lessors or their agent to the repairs in question. The lease being in writing its provisions control the

rights of the parties so far as relates to any negotiations had or agreement made before and at the time of its execution pertaining to the subject of the demise, as they are deemed to have been merged in the writing. The testimony before mentioned of the defendant was, therefore, ineffectual to charge the plaintiffs with liability for such repairs. (*Cleves* v. *Willoughby*, 7 Hill, 83; *Wilson* v. *Dean*, 74 N. Y. 531.) But there is some evidence on the part of the defendant tending to prove that the plaintiffs' agent, some time after, consented to the making of the contract to do the work which was afterwards performed, and understood that the contractors were about to proceed in its performance.

Assuming that the evidence of his consenting to and participating in the making of the contract to do the work was such as to permit the inference of liability of the plaintiffs, the question arises whether or not such inference was effectually repelled by what followed. Before proceeding to the further consideration of the facts, it may be stated, as legal propositions, that a lessor, without an express agreement to that effect, is not bound to make repairs, nor is he chargeable for those made. (*Witty* v. *Matthews*, 52 N. Y. 512.) But if the landlord has undertaken to make repairs the tenant, on his refusal to do so, may make them and charge the necessary expense to the landlord, or leave the premises and recover the damages sustained. (*Myers* v. *Burns*, 35 N. Y. 269; 33 Barb. 401; *Cook* v. *Soule*, 56 N. Y. 420.)

It appears that about the time the work of putting in the front of the store was commenced the plaintiffs' agent forbid the performance of it, of which the defendant and the contractor were advised, and about the same time, in answer to the defendant's letter on the subject, one of the plaintiffs wrote him, denying knowledge of any agreement to make the repairs and refusing to consent that they be made.

If there had been any promise or acquiescence on the part of the plaintiffs by their agent it was executory, and they could not be required to proceed with the work. And it is at least very questionable whether there had been such agreement made by them or in their behalf as would enable the defendant to cause the repairs to be made and charge them with the expense.

It seems that the defendant and his brother were then occupying

the store and doing business there in their firm name of J. Fahy & Co. And being so advised of the refusal of the plaintiffs to make the repairs the defendant subscribed the firm name of J. Fahy & Co. to an agreement, in writing, which was delivered to the plaintiffs, expressing an undertaking as follows : " For and in consideration of one dollar, received by the undersigned of Caroline L. Ely and Almira F. Beers, executors of the estate of the late Joseph Field, deceased, we do hereby agree to indemnify and save harmless the said executors or their successors from the payment of any and all costs, charges and expenses which may be expended or incurred in the making certain changes or alterations now contemplated to be made by us to the front of the " store building in question. The repairs there referred to are none others than those in controversy. By reference to the letters of the defendant it appears that he was desirous of having the new front put in, and by this agreement it is stated that his firm contemplated doing it. That agreement, so executed by the defendant, is not consistent with an existing obligation of the plaintiffs to do it. And for the purpose of the question here it may not be important whether the defendant alone or jointly with his partner, as the terms of the instrument import, undertook to indemnify the plaintiffs, because if they should be charged with and be required to pay for the repairs the defendant would be liable upon such undertaking to reimburse them, although he might be so jointly only with his partner.

And the allowances to the defendant or recovery by him of his alleged counterclaim would be productive of circuity of action which the law does not favor, but seeks to prevent. (*Carr* v. *Stephens,* 9 Barn. & Cress. 758.)

There would have been a different question if the agreement had been the subject of an action by the plaintiffs. Then the nonjoinder of his partner as a defendant would have been available as a defense. But here the defendant cannot be prejudiced by the application of the principle against circuity of action, because it appears by the agreement of the firm that the repairs were made, not at the expense of the defendant alone, but were made by his firm.

These views lead to the conclusion that the verdict was properly directed for the plaintiffs, and that none of the exceptions at the trial were well taken.

The motion for a new trial should be denied, and judgment ordered for the plaintiffs on the verdict.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.

Defendant's motion for a new trial denied, with costs, and judgment ordered for the plaintiffs on the verdict.