NEW-YORK,
May, 1822.

LYNDE
v.
NOBLE.

Lynde *against* Noble.

A *certiorari* will not lie, to remove into this Court proceedings commenced before a Judge of the Court of Common Pleas, under the act of the 13th of April, 1820, "to amend the act, entitled, an act concerning distresses, rents, and the renewal of leases." (sess. 43. ch. 194.) until the case has been finally tried, and judgment given thereon, before the Judge of the Court of C. P.; nor will a writ of certiorari, though issued after judgment, stay the writ of restitution of possession, in such case.

DAVIS, for the plaintiff, moved to quash the *certiorari*, in this cause, on the ground of its having been irregularly issued. It appeared that the *certiorari* had been issued to remove certain proceedings commenced before the Court of Common Pleas of *Courtlandt* county, instituted by *Lynde* against *Noble*, under the act passed *April* 13, 1820, (sess. 43. ch. 194.) entitled, " An act to amend an act, entitled, an act concerning disresses, rents, and the renewal of leases, passed *April* 5, 1813, and for other purposes." *L.* made oath in writing, before *Townsend Ross*, esq. one of the Judges of the Court of Common Pleas, pursuant to the act, stating that *N.* was his tenant of a certain farm, &c. in *Homer*, &c.; that the term of *N.*, in the premises demised, expired the 10th of *March*, 1822; and that 140 dollars of the rent was due to him and unpaid by *N.*, who continued in possession of the premises after the expiration of the term. The Judge thereupon issued a summons, requiring *N.* forthwith to remove from the premises, or to show cause, before him, on the 14th of *March*, 1822, at, &c. why the said *L.* should not be put in possession of the premises. At the time and place appointed, *N.* appeared before the Judge who issued the summons, and made oath, under the second section of the act above mentioned, stating, in substance, that the contract under which he held the premises in question was usurious, and, therefore, as he was advised by counsel, void; and, consequently, that he (*N.*) did not hold or claim the premises contrary to an agreement then existing between him and the said *L.*, and that he owed nothing for the rent of the premises. It was objected, on the part of *L.*, that the affidavit was insufficient to entitle *N.* to a jury; but that he (*N.*) ought to swear positively, that he did not hold and claim the premises contrary to an agreement then existing between him and *L.*; and it was not sufficient to state it inferentially, or by advice of counsel. The Judge overruled the objection, and issued his precept to the sheriff of the

county, commanding him to summon a jury to appear before him, the said Judge, agreeably to the provisions of the said act, at, &c. The parties again appeared before the Judge at the time and place appointed, and the sheriff returned the precept, with the names of the jurors summoned by him, and who, being called, appeared. The counsel for *N.* then produced a writ of *certiorari*, which had been allowed by *E. Miller*, Esq. first Judge of the Court of Common Pleas of *Cayuga* county, on the 13th of *March*, 1822. It was insisted, on the part of *L.*, that the *certiorari* was not a *supersedeas* to the proceedings before the Judge, which could not be removed by *certiorari*, until the jury had passed upon the case, and it had been tried before the Judge. And the Judge being of that opinion, proceeded in the trial; and the jury having been sworn, *L.* produced a lease executed by him and *N.* of the premises in question, for one year, ending the 10th of *March*, 1822, for one hundred and forty dollars rent, and which *N.* agreed to pay. The execution of the lease was proved, and that *N.* had been in possession of the premises during the preceding year, and that he remained in possession on the 13th of *April*, 1822. The jury gave a verdict, " That the said *Solomon Noble* did hold and claim the premises in question, contrary to an agreement then subsisting between him and the said *Charles W. Lynde*." But the Judge declined issuing his warrant to put the plaintiff in possession of the premises, until he had the opinion of this Court upon the regularity of the proceedings.

*Van Ness*, for the defendant, contended, that wherever a jurisdiction is given in an inferior Court as to the possession of land, the party has a right to have the question tried in this Court. And for that purpose, it was necessary that a *certiorari* should lie before a trial or decision below. The act of *April* 13, 1820, confers very great and extraordinary powers, and ought to be construed with great strictness. The proceedings under this act are analogous to those under the *act to prevent forcible entries and detainers*, in regard to which this Court decided, that the party was entitled to a *certiorari*, as a matter of course. (*People v. Runkel*, 6 *Johns. Rep.* 334.)

*Davis*, in reply, said, that until there was a decision in the Court below, by which the party was aggrieved, there could be no ground for a *certiorari*. The act gives the Court of Common Pleas jurisdiction to try the question, whether tenant or not. This, by necessary implication, takes away the remedy by *certiorari*, until there has been a trial and decision on that question. Until then, there is nothing to be removed to this Court.

WOODWORTH, J., delivered the opinion of the Court. This is an application to quash the writ of *certiorari*, issued to remove certain proceedings, commenced under the " act to amend the act concerning distresses, and for other purposes," passed the 13th of *April*, 1820.

Before the passing of this statute, the remedy to recover possession, where the tenant held over, was expensive and dilatory. The legislature have prescribed a summary proceeding, calculated to secure the rights of parties, and insure a speedy decision. This remedial act must be construed liberally, to carry into effect the intent, by suppressing the mischief, and advancing the remedy.

If a *certiorari* will remove the proceedings into this Court, before a trial is had before the Judge authorized to try the question of possession, there is nothing gained by the statute; for the tenant, by that course, may delay the landlord as long as he could before the passing of the act, and subject him to, at least, equal expense. Such a construction would, virtually, be a repeal of the statute. Its provisions would become useless, if the complaint, as soon as it was made before the magistrate, might be brought into this Court for trial. In the present case, *Lynde* made application for process, on the 12th of *March*; a summons issued on that day; and the *certiorari* was allowed on the 13th of *March*. There had been no trial, order, or judgment. The sound construction of the statute is, that the proceedings must be conducted to trial and judgment, in the inferior tribunal.

It is admitted, that this Court possess, by the common law, authority to award a *certiorari*, not only to inferior Courts, but to persons invested by the legislature with power to decide on the property or rights of the citizen,

even in cases where they are authorized by statute finally to hear and determine; and this power can only be taken away by express words. (*Lawton* v. *Commissioners of Highways*, 2 *Caines' Rep.* 182. 8 *Term Rep.* 542.)

The necessity of a superintending power *to revise the proceedings and correct the irregularities* committed by inferior officers, cannot be questioned; this is its legitimate office; it does not, before trial, withdraw the question to be tried from the inferior jurisdiction, but may, subsequently, cause it to be reviewed. When this *certiorari* was granted, there had been no order, judgment, or trial; the magistrate had performed a ministerial act only; he had administered an oath, and issued a summons. By allowing a *certiorari*, the superior tribunal would assume an original jurisdiction, instead of a power to review and correct.

I have not met with any case where, in a civil proceeding before an inferior magistrate, who has express jurisdiction by statute, a *certiorari* has been held to lie, to remove the issue or question to be tried by the magistrate to the Supreme Court.

In 1 *Bac. Abr.* tit. *Certiorari*, 560. and 2 *Hawk. P. C.* ch. 27. s. 30. it is stated, as a good objection against granting a *certiorari*, that issue is joined, and a *venire* awarded for the trial in the Court below. It has been urged, that the practice in this case is analogous to that under the act to prevent forcible entries and detainers, where the proceedings may be removed into this Court for trial. It will be seen, however, that there is no analogy. The fifth section of that statute provides, that if the traverse taken by the person indicted, either before the Justice, or before the Justices of the Supreme Court, in case the proceedings be removed into the Supreme Court, before such trial, then restitution shall be allowed, in the same manner as if no plea or traverse had been put in by the person indicted. It, also, provides for the payment of costs by the party convicted, to be assessed by the Justices of the Supreme Court, if the proceedings shall be removed. The provisions of the act, by implication, allow a removal. The obvious construction is, that when a person is indicted, he has an election as to the Court before whom the traverse shall be tried. The statute evidently in-

NEW-YORK, tended to confer that right, by prescribing the form of pro-
May, 1822. ceeding subsequent to removal. The uniform practice un-
LYNDE der it has been to issue a *certiorari*, of course, when applied
v. for, without showing special cause. (*People* v. *Runkel*, 6
NOBLE. *Johns. Rep.* 334.) The statute is construed as authorizing
the removal before trial. The common law does not ex-
tend to it: although the proceedings, in form, are of a cri-
minal nature, it is only a civil remedy for the recovery of
possession. Admitting, however, that, at common law,
a *certiorari* would lie, to remove proceedings under the act
to prevent forcible entries and detainers, it must rest on the
ground that the proceeding, by indictment, is of criminal
jurisdiction, and that this Court may award a *certiorari* to
have any indictment removed and brought before itself.
When applied for by a defendant, the Court have a discre-
tionary power, *on special cause shown*, to grant or refuse it;
but it is awarded, of right, at the instance of the King. (1
*Bac. Abr.* tit. *Certiorari*, 559.) It is evident that the writ is
not issued on this ground, for no special cause is required to
be shown. Whether the proceedings under the act to prevent
forcible entries, are considered as merely a civil remedy, or
of criminal jurisdiction, it is plain the *certiorari* is authorized
by the statute. The case now before the Court is a civil
proceeding only, where the party attempts, by *certiorari* al-
lowed before trial, to evade the jurisdiction conferred by
statute on the inferior tribunal. This practice cannot be
supported; and we are of opinion, that the writ of *certiorari*
will not lie, to remove proceedings instituted under this
statute, until the case is finally adjudicated; and even then it
will not stay the writ of restitution, and, consequently, the
*certiorari* must be quashed.

Motion granted.