## THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE CITIZENS' GAS-LIGHT COMPANY OF BROOKLYN, Appellants, v. THE BOARD OF ASSESSORS OF THE CITY OF BROOKLYN, Respondents.

*Corporations—Taxation—Statute—Capital—Real Estate—Certiorari.*

.As against corporations, the rule of taxation is just when based upon the amount of capital paid in, or secured to be paid in, after deducting therefrom the amount of such capital actually paid for real estate, assessing the remaining capital at its actual value, and leaving the real estate to be assessed upon individuals in the town or ward where situated.

The mains, or under-ground pipes of a gas company, under the streets of a city, cannot be regarded as real estate, under the statute, for the purpose of taxation.

The office of the writ of certiorari, sued out of the Supreme Court to review the proceedings and determinations of inferior tribunals, extends to the review of all questions of jurisdiction, power, and authority of the inferior tribunals to do the act complained of; and to all questions of regularity in the proceedings.

The judgment of the Supreme Court upon these questions of regularity, jurisdiction, etc., is reviewable in this Court.

*Lucien Birdseye* and *Joshua M. Van Cott* for Appellants.

*A. McCue* for Respondents.

Mason, J.—That the Assessors, in this case, have disregarded the mandate of the statute, requiring them to put the price paid by the corporation for its real estate upon the assessment roll, is apparent from the return itself. That they have, by this error, put it out of the power of the Supervisors to assess a proper tax upon the capital of the Relators is, to my mind, equally clear. The Revised Statutes, as amended by the acts of July 21, 1853, and April 15, 1857, prescribe a complete scheme for taxing corporations. The second section (1 R. S. 414) requires the president, cashier, secretary, or other proper officer of every such incorporated company, on or before the first day of July in each year, to make and deliver to the Assessors, or one of them, of the town

or ward in which such company is liable to be taxed, a written statement, specifying:

1. The real estate, if any, owned by the company, the towns or wards in which the same is situated, and the sums actually paid therefor.

2. The capital stock actually paid in and secured to be paid in, excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the State, and by any incorporated literary or charitable institution; and,

3. The town or ward in which the principal office, or place of transacting the financial business of such company, is situated; or, if there be no such principal office, the town or ward in which its operations are carried on, or in which it is liable to be taxed.

By the sixth section of the said statutes, as amended by chapter 654 of the Laws of 1853, the Assessors are required to insert in the first column of their assessment rolls, the name of every incorporated company in their respective towns or wards liable to taxation on its capital, or otherwise; and, under its name, they shall specify the amount of its capital stock paid in, and secured to be paid in; the amount paid by such company for real estate then belonging to such company, wherever the same may be situated; the amount of all surplus profits or reserved funds exceeding ten per cent. of their capital, after deducting therefrom the said amount of said real estate, and the amount of its stock, if any, belonging to the State, and to incorporated literary and charitable institutions; and, in the second column, they are required to enter the quantity of real estate owned by such company, and situated within their town or ward; and, in the third column, the actual value thereof, estimated as in other cases (1 R. S. 416); and, in the fourth column, they are required to enter the amount of the capital stock of every incorporated company paid in, and secured to be paid in, and of all surplus profits or reserved funds, as aforesaid, after deducting the sums paid out for all real estate of such company, wherever the same may be situated, and then belonging to it, and the amount of stock, if any, belonging to the people of this State, and to incorporated literary and charitable institutions

(Laws 1853, ch. 654, 1 R. S. 416; 3 sub. sec. 6, amended by ch. 654 of the Laws of 1853).

These provisions of the statute are all of them mandatory.

The language employed in the statute is, "*they shall enter*" these things in the assessment roll, and nothing short of a strict compliance with these requirements of the statute will excuse them. The effect of these provisions of the statute is to require the Assessors to put the real estate of the corporation into the assessment roll at the price paid for it, and no duty is imposed upon them at all in regard to assessing the value of the real estate, except that specified by the second subdivision of the sixth section of 1 R. S. 415, which requires them to enter in the second column the quantity of real estate owned by such company, *and situated within their town or ward;* and, in the third column, the actual value thereof, estimated as in other cases. This is to enable the assessment to be made to conform to the provisions of the sixth section of 1 R. S. 389, which requires *the real estate of all incorporated companies to be "assessed in the town or ward in which the same shall lie, in the same manner as the real estate of individuals*" (1 R. S. 389, § 6). Not so as to the real estate owned generally by the corporation; there is nothing in any of the provisions of the statutes requiring the Assessors to carry into the assessment roll the quantity of real estate generally owned by such corporation, or to assess the value thereof. And no such general assessment of the value of the real estate generally of these corporations, when situated out of their town or ward, is ever made by the Assessors, and if they were so to assess the real estate outside of the limits of their own jurisdiction their assessment would be without any warrant of law. They would simply perform extra-judicial duties having no binding force. A corporation may own lands in any State in the Union, whenever they can obtain the consent of such State to do so, and the Assessors can have no means of assessing their value. This impracticability has led, as we have already seen, to an entirely different mode of ascertaining to what extent the capital of the corporation is invested in real estate.

The duty is imposed upon the officers of the corporation to make an annual statement, on or before the first day of July, of the real estate owned by the company, and the price paid for it, and where situated. This statement must be sworn to by one of the officers of the corporation named in the statute, and forms the basis of the value of its real estate for all purposes of assessing the capital stock of the company. This scheme of the statute is to have placed in the assessment roll the amount of capital paid in, and secured to be paid in, and the amount of its capital paid out for real estate then belonging to such company, wherever the same may be situated, together with the amount of surplus funds exceeding ten per cent. of their capital, after deducting therefrom the amount paid for its real estate, and the amount belonging to the State, and to incorporated literary and charitable institutions (Laws 1853, ch. 654); and these are to be made the basis of the assessment; and, as there is no provision for carrying any general assessment of the value of all the real estate, wherever situated, into the assessment roll, it is apparent that the assessed value of the real estate generally, so far as it is to be taken into the account in ascertaining what assessment shall be made upon its capital, is the price paid for such real estate, and the price paid is to be deducted from its estimated capital; and this real estate is to be assessed as other real estate of individuals, in the town or ward where the same is situated, at its value, whether more or less than the price paid for it. It is necessary to consider, in this connection, the act of April 15, 1857. It is proper to say that this act does not, in terms, repeal any of the sections of the Revised Statutes to which we have referred. Nor does it repeal anything contained in chapter 654 of the Laws of 1853.

The act of April 15, 1857, amends the fifteenth section, 1 R. S. 417, so as to read as follows: "The amount of taxes assessed on all incorporated companies liable to taxation, shall be set down by the Board of Supervisors in the fifth column of the corrected assessment roll, and shall form a part of the moneys to be collected by the collector." This is precisely the same as the fifteenth section of the Revised Statutes, and the amendment then declares that

" The capital stock of every company liable to taxation, except such part as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds exceeding ten per cent. of its capital, after deducting *the assessed value* of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county " (Laws of 1857, ch. 456, vol. 2, p. 2). The assessed value of the real estate spoken of, in this section must be construed to mean the value as ascertained by the mode of assessment prescribed in the provisions of the statute above referred to.

These several statutes are " in pari materia," and relating to the same subject, and must be read together in construing them, because they are considered as having one object in view, and acting upon one system (Smith on Stat. Con. 752, § 639). This rule of taxation is certainly just when based upon the amount of capital paid in, or secured to be paid in, and after deducting the amount actually paid out for real estate, to assess the remaining capital at its actual value, leaving the real estate, as the law leaves it, to be assessed like other real estate upon individuals in the town or ward where situated. This, I am satisfied, is the scheme and mode of taxation of the property of corporations as prescribed by these statutes, taken and considered in their connection, which is the only legal rule of construction to be applied to them.

There is, however, another construction of section 3 of the statute of 1857, which no less clearly shows the error in the assessment under consideration. It is this : that the direction, in that section, to deduct the assessed value of the real estate, applies only to the manner of ascertaining the amount of the surplus profits—that is to say, from the whole value of the real estate, and all shares of its stock of other corporations owned by said company which are taxable on their stock. Obviously, the balance will be the amount taxable, as capital and surplus (ten per cent. being deducted from such surplus, as previously directed).

A careful reading of this act of 1857 suggests that this mode of ascertaining the surplus was in contemplation ; and yet, it remains equally certain, as under the views above expressed, that the assessment before us was erroneous, as this construction in nowise affects the duty of the Assessors to deduct the sums paid for real estate from the capital stock, before assessing the value thereof. This latter construction, nevertheless, involves the necessity, for the purpose of ascertaining the surplus, of bringing into view real estate which may be situated out of the town or ward, or even out of the State, which would, as before suggested, be impracticable. We are therefore driven to the alternative of imputing to the Legislature the enactment of a provision which, by using the term " *assessed value*," means that an estimate may be put upon the real estate wherever situated, which would be impracticable, or, of using the words " *assessed value* " in a sense in harmony with the whole scheme and plan of the statutes, viz., to tax the capital and surplus not expended in the purchase of real estate at its value, and to tax such portions of its real estate as lie within the town or ward in which the assessment is made at its value, as other real estate is assessed, leaving its other real estate (if any) to be taxed wherever it may be situated.

This rule was wholly disregarded by the Defendants in this case, in making up the assessment roll against the Relators. In the sworn statement furnished to the Defendants by the Relators, as required by the statute, the capital paid in, and secured to be paid in, is put down at $1,000,000, and the amount paid out at $856,358.26. The Assessors refused to make the assessment roll against the Relators conformably to said statement, and determined to deduct from the amount of the capital stock only what they estimated the actual value of the real estate of the said corporation to be, instead of the sum which the said corporation actually paid for the real estate then owned by it. They assessed the real estate only of the value of $214,800, and deducted the same from its capital of $1,000,000, leaving a balance of $785,200 of its capital subject to taxation. Now, it is no answer to say that a portion of this real estate, as embraced in the Relators' statement

to the Defendants, was for large iron mains laid in the streets to conduct their gas to their customers; for of this sum of $856,-358.26, the sum of $505,928.26 was paid out and expended by the Relators for land, and the construction of buildings and works thereon, and this sum should have been deducted from the amount of their capital, irrespective of the question whether these iron mains are to be regarded as real estate or not.

We must look to the statute, instead of the common law, in determining whether these iron mains which run under the streets of the city are to be regarded, for the purposes of taxation, as real estate or not, as it is a matter of statute regulation entirely.

The statute declares that "The term 'land,' as used in this chapter, shall be construed to include the land itself, all buildings and other articles *erected upon* or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, quarries and fossils, in and under the same, except mines belonging to the State; and the terms 'real estate,' and 'real property,' whenever they occur in this chapter, shall be construed as having the same meaning as the term 'land,' thus defined" (1 R. S. 387, § 2; 1 R. S., 5th ed., 905, § 3).

Under this statute was held, in the case of Boreel et al. *v.* The Mayor, that incorporeal hereditaments were not subject to taxation as land, or real estate (2 Sandf. S. C. 552; see also 4 Paige, 394). These mains running under the streets of the city, not being erected upon or affixed to the Relators' land, cannot be regarded as real estate, under the statute, for the purpose of taxation. The mains are not real estate, as that term is defined in the statute regulating the assessment of taxes, and I do not think they can be held as fixtures under the common doctrine upon that subject. The only remaining question is, whether the Supreme Court, in virtue of its supervisory power over inferior tribunals by means of the common law writ of certiorari, had jurisdiction, and ought in plain and clear duty, under the law, to have corrected this error of these Assessors.

It is claimed and insisted by the Defendants, that how far, and in what cases the Supreme Court will exercise this power of review, are questions addressed to the sound discretion of that

Court, and as that Court have quashed the writ in this case, their discretion cannot be reviewed in this Court. I cannot assent to this proposition, when applied to a case like the present. The office of this writ of certiorari, when issued out of the Supreme Court to review the proceedings and determination of inferior tribunals, has fixed limits, that may be regarded as settled by the adjudged cases in this State, although it must be conceded that there is great conflict in the decisions, when we get beyond a certain point in the functions of the writ. I think we may safely say that the following rule may be deduced from adjudged cases in this State, viz., that its office extends, unquestionably, to the review of all questions of jurisdiction, power, and authority of the inferior tribunal to do the acts complained of, and all questions of regularity in the proceedings—that is, all questions whether the inferior tribunal has kept within the boundaries prescribed for it by the expressed terms of the statute law, or by well-settled principles of the common law. The following cases are referred to as fully sustaining these propositions: 20 John. 80; 6 Wend. 566; 10 id. 421; 15 id. 452; 8 Cow. 13, 16; 7 id. 108, 136, 137; 17 Wend. 464; 20 id. 103; 2 Hill 9, 11; id. 398; 6 How. 25; 6 Cow. 570; 2 Wend. 395; 5 id. 98; 32 Barb. 131; 43 id. 232; 3 Seld. 152; 3 Kern. 223; 23 N. Y. 192, 222; 26 id. 163.

I cannot assent to the proposition, that when the Supreme Court have issued the writ, heard the case upon the return, and have committed a plain error in law, and have come to the conclusion, erroneously, as in this case, that the Assessors have kept within the boundaries prescribed by the statutes, and therefore hold that the Relators can take nothing by the writ, and give judgment quashing the writ, that such judgment is not subject to review in this Court. The judgment of the Supreme Court, in such a case, is not rendered upon the ground that the proceedings ought not to be reviewed by the writ, or that it was improvidently issued, but upon the ground that the allegations of error have not been sustained in the given case. Since the decision of the several suits growing out of the tax assessments in the city of Poughkeepsie, there is no redress to the citizen against illegal assessments like

this, if it is not afforded upon this common law writ of certiorari, which it certainly can be, so far as to require the Assessors to keep within the rules of law, and comply with terms prescribed by the statute. The judgment of the Supreme Court must be reversed, and judgment given for the Relators, directing and requiring that the sum of $291,128.26 be stricken out of the capital stock in said assessment, leaving the assessment to stand as thus corrected.

Concurring: HUNT, WOODRUFF, DWIGHT and BACON, JJ.

For affirmance: GROVER, CLERKE, and MILLER, JJ.

MILLER, J. (dissenting.)—This is an appeal from an order of the Supreme Court, in the Second Judicial District, quashing a writ of certiorari, with costs.

On a petition of the Relators, alleging certain errors in the assessment roll made by the said Board for the year 1866, the Supreme Court made an order that a writ of certiorari issue requiring the Board to return its proceedings in that behalf to the said Court.

A return having been made, and the parties heard on the merits, the Court quashed the writ. The Relators were incorporated as a gas company, under the general act passed in 1848.

In June, 1866, they made their annual written statement, under oath, to the Board of Assessors, in which they set forth that their nominal capital was $1,000,000, and that they had paid for their real estate $856,358.26. They returned no surplus or reserved profits, and made no claim to exemption from taxation.

The Assessors, instead of deducting the sum stated to have been paid for real estate from the actual value of the capital, put down the actual value of the capital at $1,000,000, and deducted from it only $214,800 ; putting that sum in the roll as the "valuation of the real estate." It appears by the petition on which the certiorari was issued, that the sum specified in the annual statement as the price paid for the company's real estate was made up of two items—one, $505,928.26, being the cost of land, and the buildings and fixtures thereon; the other, $350,430, being the sum paid for iron mains, and for laying them in the streets, &c.,

the mains being regarded as affixed to the land, and of the nature of real estate.

In their return the Assessors state that they have estimated the capital stock of said company at $1,000,000, its actual value; that they deducted "the assessed value" of the real estate—$214,800 —from the estimated value of the capital stock, and assessed it at $785,200 for personal property. Referring to the annual statement, they further say, "that the secretary included in the amount named as paid for real estate, the amount paid for pipes owned by the said company, and which were laid in the streets of the city of Brooklyn, and not upon any premises of said company, and that the amount named as aforesaid is, therefore, not the amount paid by said company for real estate, or the value of its real estate, but is, excepting the sum of $214,800, composed of items of personal property."

The return was heard at the General Term in the Second District, in December, 1866, and an order was made quashing the writ of certiorari, with costs.

Judgment was entered, and the Relators appealed to this Court.

The fact that the Assessors have not fully and particularly stated the various items required by the statute (S. L. of 1853, p. 1240), is not important, provided they have substantially complied with the provisions of the Revised Statutes, and the acts amendatory thereto, in reference to the assessment of corporations.

Although the third section of the act of 1853 requires that the Assessors shall, in the fourth column, enter the amount of the capital stock of the incorporated company paid in, &c., " after deducting the sums paid out for all the real estate of the company," I do not understand that this provision is entirely peremptory and controlling; for, if such were the case, there would be no means of correcting the erroneous and false estimates made by officers of incorporated companies for moneys paid for real estate, and expenditures of this character would rest entirely, or at least to a great extent, in the judgment, and sometimes in the entire misapprehension, of the parties who made them.

Such clearly was not the intention of the law, as is especially

manifested by the provision of the third section of chapter 456 of the Laws of 1857, which provides that the capital stock of every company liable to taxation, &c., "after deducting the *assessed value of its real estate,*" &c., "shall be assessed at its *actual value,* and taxed in the same manner as other personal and real estate."

The effect of this enactment, I think, is, to qualify the provisions of the act of 1853, and, in connection with the general object and tenor of the statute in question, to leave it for the Assessors to place a valuation upon the real estate, without being entirely confined to the statement of the company. What is the "assessed value," unless it be the value put upon the property by the Assessors? It cannot mean the amount which the Assessors are required to put in the first column of the assessment roll—that is, the price paid for the real estate, as is claimed; because that is not assessed, but simply a statement of the company, which is qualified by the provision referred to, and contained in the act of 1857.

Nor does this construction interfere in any way with the assessment of the real estate in the ward where it belongs, where, as in this case, the jurisdiction of the Assessors extends over the whole city. The question is not presented as to its effect in case the land was located in other towns, and it is not, therefore, necessary to look at it in that point of view. The effect of this interpretation would produce no injustice; for if the company were aggrieved, they had a right to apply to the Assessors to change and reduce the valuation in accordance with the provision of the statute (chap. 536, S. L. of 1857, § 6, p. 123).

Assuming that I am correct in this construction of the statute, the question then arises whether the Assessors have assessed a larger amount for personal property than was warranted upon the facts presented to them. The petition of the Relators shows that they had expended $505,928.26 for land, buildings, and works thereon, and $350,430 for iron mains, and the laying thereof, in the streets of Brooklyn.

The return of the Assessors shows that they estimated the capital stock at its par value, and, after deducting the assessed value

of the real estate, have assessed the company for the balance on personal property; and that the secretary of the company included, in his statement of the amount named as paid for real estate, the amount paid for pipes owned by said company, which are laid down in the streets of Brooklyn, and that the amount thus named is not the amount paid for real estate, or the value of real estate, but, excepting the sum of $214,800, composed of personal property.

The return of the company, I am inclined to think, must be controlling; and we cannot, in a common law certiorari, measure the weight to be attached to conflicting statements, if the petition and return can be regarded in that light.

We are then to determine whether the mains or pipes laid in the streets were properly assessed as personal property. They were not upon the real estate, but mainly in the streets of Brooklyn, which did not belong to the Relators.

They are liable to be changed or moved at the will and pleasure of the owner, and are not so immediately connected with the real estate as to be attached to the freehold, and so as to make them appurtenances thereto, or a permanent fixture. I think, without examining the numerous cases on the subject of fixtures, that they must be regarded as machinery, so far as they are attached to the building, and were capable of removal without injury to it (Voorhies *v.* McGinnis, 46 Barb. 242).

Beyond the portion immediately connected with the real estate of the company, I think they cannot be considered as even attached to it, or as anything but detached personal property. I am also of the opinion that they are not included within the definition of the terms "lands," "real estate," and "real property," as defined by the Revised Statutes. The statute regulating the assessment and collection of taxes declares that the term "land," as used therein, "shall be construed to include the land itself, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, quarries, and fossils in and under the same, except mines belonging to the State; and the terms 'real estate,' and 'real property,'

whenever they occur in this chapter, shall be construed as having the same meaning as the term 'land,' thus defined" (1 R. S. 387, § 2). The statute also declares that "the terms, 'personal estate,' and 'personal property,' whenever they occur in this chapter, shall be construed to include [certain articles specified, and] such portion of the capital stock of incorporated companies, liable to taxation on their capital, as shall not be invested in real estate" (1 R. S. 388, § 3).

It is very evident, I think, that the pipes or mains of the Relators are not, within the meaning of the statute, real estate, and were not properly to be assessed as such.

I have not discussed the question whether the decision of the General Term can be reviewed, as the views expressed render it unnecessary.

It is, perhaps, appropriate to add, that the petition upon which the certiorari was granted does not set forth any objections to, or make any complaint as to, the manner in which the assessment was made up; and even if it is not in accordance with, and upheld by, the provisions of the act of 1857, it may be questionable whether the Relators are entitled to urge these objections upon the hearing of the certiorari.

The Court below rightly quashed the writ and the order made, and the judgment entered thereon should be affirmed.

Judgment reversed.

JOEL TIFFANY,
State Reporter.