THE PEOPLE ex rel. THE AMERICAN LINEN THREAD COMPANY *v.* THE ASSESSORS OF THE VILLAGE OF MECHANICVILLE.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1871.)

A writ of certiorari issues to correct an erroneous assessment, made by the assessors.

The application of the rule for the assessment of property belonging to corporations, in *People* v. *Assessors of Brooklyn* (39 N. Y., 81), is not affected by the fact that the real estate of the corporation is entirely within the assessors' jurisdiction.

When the evidence presented to the assessors by an applicant for the reduction of assessments is uncontradicted and the facts clear beyond dispute, they must be governed by such evidence.

And they should hesitate to disregard the positive affidavit of the applicant, and direct proof.

But where from information received from others and the affidavits they are led to disbelieve the sworn statements of the applicant, the information is a proper subject for their consideration.

Whether the omission to inform the applicant, of *ex parte* affidavits, considered by them, would not affect the assessment, *quere.*

But such affidavits are not to be regarded as a part of the proceedings of the assessors, upon *certiorari* brought to review such proceedings, if it does not appear that they were read as evidence by the assessors, and considered by them in making their decision.

WRIT of certiorari for the purpose of correcting an alleged erroneous assessment made by the defendants, as assessors, against the real and personal property of the relator in the village of Mechanicville for the year 1871.

The relator was a stock corporation, with a capital of $70,000.

The assessors for the year 1871 assessed the relator:

For real estate............................. $125,000 00
Personal property.......................... 29,786 81

    Total................................. $154,784 81

They also in the assessment roll stated the capi-
    tal paid in and secured to be paid in at .... $70,000 00
And deducted amount paid out for real estate, 40,213 19

Leaving personal estate or stock............ $29,786 81

The return to the writ shows that at the time the defendants met to hear the parties aggrieved, and to correct the assessment roll, the relator appeared before them and presented affidavits which showed, 1st. That the real estate belonging to them was worth not to exceed $45,000, but cost $40,213.19. And 2d. That the capital stock of the company was worth but eighty per cent of its nominal amount, and claimed to have the assessment against the relator reduced accordingly; and further, that in case no reduction in the assessment of the real estate was made, the assessment for personal property should be entirely stricken from the roll, inasmuch as the assessed value of the real estate would, in such case, exceed the actual value of the capital stock of the company as fixed and ascertained by the assessors.

The return also states that although Lewis E. Smith, the treasurer of the relator, swore before said assessors that the stock of said Linen Thread Company had been worth only eighty per cent of its par value since February 16, 1871, yet we, the said assessors, from our knowledge of said company and its property and affairs, and from the fact of its having on the first day of January, 1871, declared a dividend of

People ex rel. Am. Linen Thread Co. *v.* Assessors of Vil. of Mechanicville.

ten per cent upon its stock, and from the fact that one of them having been repeatedly informed since February 16, 1871, and before June 8, 1871, by different stockholders of said company and from the said Howland (one of the assessors) having heard the said Lewis E. Smith since the month of February, 1871, and repeatedly prior to that time, and during the past year, and other stockholders of said company say, that the stock of said company was worth at least par, or one dollar for each dollar of its capital stock, and from the affidavits then and there before them, annexed and made by the persons hereafter mentioned, did not believe or credit the sworn statement of Lewis E. Smith, as to the value of said stock.'

That on said 8th day of June, 1871, the said assessors, had before them, and in their possession, the annexed affidavits of several persons who were named, who severally swore to the value of the real and personal property of the said company, and that they had said affidavits before them then, and in their possession before and at the time they passed upon and decided the application of said company for a reduction of its assessment.

It also appeared that the attention of the relator or his counsel was not called to these affidavits, nor called to the fact that they were then present for use or used upon the hearing before the assessors on the application for a reduction of the amount of the assessment.

These affidavits showed the real estate to be worth $125,000, and had been used, upon a motion made by the relator, against the defendants for a mandamus. The defendants refused to reduce or alter the assessment roll upon the application of the relator, and this writ of certiorari was issued.

*A. Pond,* for the relator.

*C. A. Waldron,* for the defendants.

Present—Miller, P. J.; Parker and Daniels, JJ.

MILLER, P. J.   The assessment made by the assessors was, in form, I think, in accordance with the decision of the Court of Appeals in case of *The People* v. *The Board of Assessors of Brooklyn* (39 N. Y., 81).   That case holds that, as against corporations, the rule of taxation is correct when based upon the amount of capital paid in; or secured to be paid in, after deducting the amount of such capital actually paid out for real estate, assessing the remaining capital at its actual value, and leaving the real estate to be assessed the same as other real estate of individuals in the town or ward where situated, at its actual value, whether more or less than the price paid.

There is no injustice in such a course, as it would enable the assessors to add to the value of the real estate such an amount as was authorized by the facts.  If the real estate has increased in value beyond its first cost, there is no good reason why the increase should not be added.  Such an addition does not make a double taxation, but merely compels the corporation assessed to pay taxes for the full value of its property at the time.

It does not prevent the application of the rule established in 39 N. Y., 81, because in that case the corporation owned a large amount of real estate located outside of the territorial limits of the assessors, and beyond their jurisdiction, and there is no such distinction between the two cases as would authorize a disregard of the doctrine laid down in the case cited.

It is insisted that the assessors erred in refusing to strike out the assessment for personal property, and to reduce the assessment of the real estate, which the evidence before them upon the hearing showed did not exceed $45,000 in value.

According to the provisions of the statute (S. L. 1851, chap. 17, § 6, as amended by S. L. of 1857, chap. 53, § 8), whenever any person shall apply to the assessors to reduce the value of his real and personal estate, as set down in the assessment roll, it is made the duty of the assessors to examine such per-

son, under oath, &c.; and, after such examination, "they shall fix the value thereof at such sum as they shall deem just."

This statute has been the subject of judicial interpretation in the courts of this State. In *The People v. Reddy* (43 Barb., 544) the applicant before the assessors testified that he had not the personal property for which he was assessed; and the court held that the assessors were bound to take his statement on that subject. In reference to the statute the court say: "This provision does not give the assessors any right to fix such value arbitrarily or capriciously. They act judicially in fixing such value, and are called upon to pass upon the evidence adduced before them; and when they have no ground in such evidence to fix a valuation different from that sworn to by the person applying for such reduction, they are bound, I think, to follow his statement under oath, as much as the assessors were formerly required to fix such value at the sum specified in the affidavit required in such cases," &c. It is also said, after stating that the object of the amendment was, to allow assessors to make an oral examination of the applicant, as the assessors may think proper, "But the assessors must act upon *the evidence* before them, like all other officers acting in a judicial capacity, and fix the valuation at just such a sum as will be warranted by *the evidence.*"

In *The People v. Ferguson* (38 N. Y., 92) the chief judge, in discussing the subject of the duties of assessors in making corrections, says: "It was the duty of the assessors to act upon the evidence before them, and to adjudge how much the actual value of the stock was reduced by these contingent liabilities, and to deduct from the assessment accordingly. The *evidence*, as presented, showed that the reduction would more than equal the surplus as found by the assessors; and there was nothing in contradiction or disparagement of the evidence. Their action is judicial, and to be governed by the evidence before them." As the assessors act judicially, they have the power to administer oaths and to hear testimony; and it is their duty to weigh the effect of the evi

dence, to judge as to its credibility, compare it with the law, and decide the question which is to be determined. (*Barhyte* v. *Shepherd*, 35 N. Y., 251.) Nor are the assessors concluded by the statement alone of the applicant; and they may, in the exercise of their general powers, make further inquiries. (*People* v. *Fredericks*, 48 Barb., 173; *People* v. *Halsey*, 36 How., 487, 502, 503.)

From the authorities cited, it may be considered as an established principle that when the evidence is uncontradicted and the facts clear, beyond dispute, the assessors are bound to act in accordance with, and must be governed by, the evidence presented to them; and when there is a positive affidavit of the applicant, and direct proof, there should be considerable hesitation in disregarding such evidence. If the person willfully swears falsely on such examination before the assessors, he is deemed guilty of willful and corrupt perjury, under the provisions of the section before cited.

In assessing the value of the stock at par, the assessors based their determination upon the ground that, from information received from other parties as well as the affidavits before them, they did not believe the statement of the treasurer of the company. So far as relates to the information received from others, I am inclined to think that it was a proper subject for consideration, and might be regarded as a part of the subject-matter to be considered; and, therefore, upon this ground the action of the assessors in assessing the personal property can be sustained.

A question is raised by the relators' counsel as to the right of the assessors to act upon the *ex parte* affidavits, and it is insisted that they committed an error in assuming to do so, and in using them in the absence of and without the knowledge of the relators.

As it does not appear from the return that the assessors did not believe the sworn statements made in the affidavits of the applicant as to the value of the real estate, the assessment of the same at the value fixed must depend entirely upon all the affidavits which actually were used and taken into con

sideration in arriving at a conclusion as to the amount for which the real estate should be and actually was assessed.

The return states that the assessors had before them and in their possession at the time of the hearing and at the time they passed upon the application these *ex parte* affidavits, but the attention of the relators was not called to the fact that they were then present for use, or that they were or would be used upon the hearing. The affidavits referred to had previously been used upon a special motion in the Supreme Court between the same parties; and although they may have been in possession of the assessors at the time, it nowhere appears in the return for what purpose they held them, or that they actually were used by the assessors at all, or that the facts stated in them were considered, in any way, in making up their final determination and in disposing of the application. It does not distinctly appear from the return that the assessors held or regarded these affidavits as a portion of the evidence in deciding the case. There are no distinct rules of practice especially established for the hearing of applications of this character, but it is quite obvious that it would have been but fair and eminently proper that the applicant should have been advised that these affidavits were a portion of the evidence, and would be considered, if such was the intention of the assessors. They were acting as judicial officers, and the party claiming to be aggrieved had a right to know, at least, what written evidence was then before them and to be used against the applicant.

Whether there was legal error in having these affidavits in the assessors' possession without the knowledge of or notice to the applicant is not important, for they were not used, if the return is to control. And without passing upon the question whether the assessors could lawfully regard affidavits which were not openly known to the applicant, I am of the opinion that in the absence of anything in the return showing that these *ex parte* affidavits were actually used as evidence and taken into consideration by the assessors, they cannot now be regarded as a part of the proceedings; that the affidavits

produced by the relator, were the only evidence before them on the subject of value of the real estate, and as they are uncontradicted, the value must stand as there fixed. There was no other evidence besides these affidavits, and under the decisions they must be considered controlling and conclusive.

I think that this was a proper case for a certiorari, and that the proceedings are properly presented to the consideration of this court.

As the highest valuation fixed for the real estate by the uncontradicted evidence is $45,000, the assessors should be directed to correct the assessment by striking out $125,000 assessed for real estate, and inserting $45,000 in the place thereof.

DANIELS, J., concurred; PARKER, J., concurred in the result.

Ordered accordingly.