6   109
32ap202

THE PEOPLE ex rel. THE ACADEMY OF THE SACRED HEART v. THE COMMISSIONERS OF TAXES AND ASSESSMENTS OF THE CITY OF NEW YORK.

*Taxation of lands of educational corporation — 1 R. S. (5th ed.), 906, § 5 — exemption from taxation created by — extent of.*

By the term "lot," as used in section 5 of 1 Revised Statutes (5th ed.), 906, exempting from taxation the lots on which buildings therein specified are situated, is meant the whole lot upon which the buildings of the college, academy or other seminary of learning are situated, without reference to its value or size; and when such lot is wholly devoted to the direct use of the schools therein mentioned, either by supporting its buildings, supplying its daily wants, or contributing the means of exercise, recreation and diversion, it is entitled to the exemption thereby created.

WRIT of *certiorari* to review the right of the relator to the exemption claimed by it from the taxation of its real estate.

*John E. Develin* and *Charles E. Miller*, for the relator.

*William Barnes*, for the respondents.

DANIELS, J.:

The case which was made in the relator's favor showed that it had been incorporated by an act of the Legislature of this State, passed in July, 1851, as an educational corporation. That it has maintained an academy in the city of New York for the education of young ladies and misses, for a period of over twenty years. That since 1867 it has owned the lands taxed by the respondents, as commissioners of taxes and assessments, and before 1870 erected, and has since used, large, commodious and suitable buildings on such lands for the purposes of, and with the school maintained by it. The lands are situated in the Twelfth ward of the city, and are contained in one parcel. The buildings erected and used cover about five acres of it, and are situated near the centre of the grounds. About eight acres of the land are used as a vegetable garden, for the use of the pupils and teachers of the academy, one acre for a cemetery, and the residue, consisting of about thirty-six acres, has been used for the recreation and walks of the pupils, who number about 850 persons. The relator claimed that the whole of its lands so used, was necessary for the use and " sufficiency and applicability " of its buildings for the purposes of the academy, and that they were used and applied exclusively in that manner, and for those reasons, upon the facts established, they were exempt from taxation. The commissioners overruled the claim made for the entire exemption of the relator's real estate from taxation, and exempted only seven acres of it, and held that the rest of the land was not, in their opinion, necessary for the use of the academy for educational purposes, and consequently was liable to be taxed. No dispute appears to exist as to the facts, but as they have been regarded as established by the commissioners, the relator was held not to be entitled to have any more of its lands exonerated from taxation, than such as the buildings used by it stood upon, and that which was required for their convenient

use and enjoyment. And it has been urged, in support of the decision made by them, that the statute under which entire exemption has been claimed on the part of the relator, fully sustains them in their conclusions. Whether it does or not is the point primarily presented for the consideration of this court by the return made to the writ. And there can be no doubt, under the authorities, that it is a proper one for judicial determination by means of the writ of *certiorari*. (*People* v. *Board of Assessors of Brooklyn*, 39 N. Y., 81; *People* v. *Board, etc., of Albany*, 40 id., 154; *People* v. *County Judge of Ontario*, 45 id., 772; *People* v. *Trustees of Ogdensburgh*, 48 id., 390.) The statutes of this State exempt from taxation " every building erected for the use of a college, incorporated academy, or other seminary of learning, and the several lots whereon such buildings are situated, and the furniture belonging to each of them." (1 R. S. [5th ed.], 906, § 5, sub. 3.) The land owned by the relator including that held liable to be taxed by the commissioners, consists of a large number of lots, as land has been subdivided in the city of New York. And the latter have in fact no buildings whatever upon them. For that reason it has been insisted that they cannot be held to be exempt under the terms of the statute. But the land exempted by the use of the term, lots, as it has been employed in this instance, cannot be restricted to what may be appropriately contained in one or more city lots. The statute is one of general application throughout the State, and the construction required by it is one which can be consistently applied to every incorporated college and school within it. There would be no reason whatever in construing the term to signify one thing in the city of New York and an entirely different thing in other portions of the State. And that would necessarily be the case if the statute were construed to mean the lots as they might be laid out and designated in the locality where the school existed. Lots are variously known as city, village, town, church and cemetery lots; also, as farm and section lots. But it was not with that signification of the term that it was used in this statute. By the context in which it has been placed, it is apparent that it was not intended to mean a lot of either of the kinds enumerated. But it was designed to include the school lots on which the buildings should be situated. That is clearly within the purpose and

intent of the law. For the propriety of the exemption is precisely the same, whether it relates to the buildings themselves and the lots on which they stand, or the grounds required to promote and secure the recreation and health of the pupils of the schools, and those engaged in teaching and guarding them. A well ordered, prosperous school requires the one as much as it does the other. It would be very unwise and indiscreet to allow young persons to be confined in school buildings upon grounds affording no reasonable opportunity for exercise and diversion. And yet that might be the effect resulting from the construction of the statute adopted by the respondents. Institutions of that nature, restrained in that manner, would soon require much more than the exemption of their buildings and the lots supporting them from taxation, to prevent a final departure of their prosperity. Education, without enduring health, is acquired at too great a sacrifice to render it of much value to its recipient. And none knew that better than the capable and competent men engaged in the revision and enactment of the Revised Statutes. It could not have been their intention to contribute, even by a limited liability to taxation, to the promotion of any thing like an inconveniently contracted system for the educational institutions then existing, or afterward expected to exist in the State. The advantages to be derived from them, in the encouragement of the means of education, were evidently deemed to be more than an equivalent to the State for the loss that might result from the relinquishment of the right of taxation over the property owned by them and directly devoted to that end. And the generous policy adopted by the statute for the encouragement of the higher class of schools, could not reasonably be satisfied by any different construction of it. What must have been designed was, to exempt from taxation the entire school lots upon which the buildings should be erected, so far as they were employed and devoted in their use directly to the promotion of the objects intended to be secured by the educational institution owning them. It was the lots of the college, academy, or other seminary of learning, on which its building stood, that the statute referred to when it used the term lots in the subdivision describing the subject of the exemption, as distinguished from lots of other descriptions. And that too without reference to the question of their value,

If they are wholly devoted to the direct use of the schools mentioned in the law, whether by supporting its buildings, supplying its daily wants, or contributing the means of exercise, recreation and diversion, that must be sufficient, under the generous policy of this State, adopted for the prosperity and success of its schools of learning, to exempt the property from taxation. By the preceding statute a still more liberal policy was maintained. For no real estate could be taxed under it belonging to any college or incorporated academy, or on which its buildings should be situated (chap. 390, § 1, Laws of 1828), while under the present law, only its lots on which the buildings have been erected are declared to be exempt. Lands owned elsewhere in detached parcels would now be probably liable to taxation under the change which was made by the revision. But, with that qualification, no reason exists for supposing that any further change was intended to be made.

The proofs submitted to the respondents, on the relator's application to be relieved, very clearly showed this to have been the construction adopted under the law in the taxation of property owned by incorporated schools. And it is well understood to have been the approved and common practice through the State. The lots on which the buildings stand, although for the most part, used for recreation and exercise, have not been deemed by the authorities proper subjects of taxation under the laws of the State. That was the view which was maintained concerning the present statute by the late chancellor and Azariah C. Flagg, who investigated the subject as a committee, at the instance of the trustees of Union College. Their conclusion was, that the revisers "used language which will now exempt all which is in any way connected with, or attached to, the college establishment, or used therewith." And, pursuant to that understanding, the college has enjoyed its 130 acres exempt from taxation. Madison University has been secured the same immunity to the extent of 140 acres; Vassar College for 210 acres, and Cornell University for even more than that. This has been the practical construction of the statute upon this subject for over forty years. Its history is a part of the public information of the times; and, for that reason, it may be noticed by the courts, even without proof. And it is potent evidence of the construction which the statute should be held to bear. It reflects the judgment

of officials required to act under it, and of the public acquiescence in their conclusions.

If room had been deemed to exist for serious doubts, the point would have been, long before this, before the courts for decision. The fact that it has not been, shows the general concurrence which has followed and tacitly approved of local and general action. In *Easton* v. *Pickersgill* (55 N. Y., 310), it was held by Judge Folger, with the concurrence of the other judges, except Judge Rapallo, who voted neither way, that general usage, long continued and unquestioned, "has great force; and the practical construction of the law by so many public officers, though not given upon adverse litigation, has still much of the weight of judicial decision." (Id., 315.) The property claimed by the relator to be exempt from taxation, was all shown to be a portion of the lots or parcel of ground on which its school buildings are situated. What they do not occupy has been devoted to the promotion of the convenience of the occupants of the buildings, supplying their wants, and affording them the means of recreation, health, and exercise. And the proofs submitted justify the conclusion that it is all needed for those purposes. It is true the property has now become of great value, but the statute has imposed no restriction by way of valuation beyond which the exemption may not be extended. That has been rendered dependent upon other considerations combining in support of the relator's application. By a just construction of the law of the State, that exemption should have been conceded. The decision by which that was refused should, without considering the other point discussed, relating wholly to what might be the proper valuation of the property, be reversed, and an order entered directing the commissioners to exclude the real estate affected by these proceedings from their assessment lists, but, under the circumstances, it should be without cost.

Davis, P. J.:

I concur with my Brother Daniels. I think it clearly sufficient, to bring the property of the relator within the exemption of the statute, to show that it is wholly devoted to the educational purposes for which the buildings of the relator were erected upon it. The school of the relator, with its instructors, pupils, and neces-

sary servants, is shown to comprise about 1,000 persons. If the respondents were vested with any discretion as to the quantity of lands which such a school may occupy, for purposes of instruction, exercise, recreation, and all other appropriate uses, I think the discretion was not properly exercised in this case, considering the importance of combining education and exercise with such seclusion as is appropriate to so large a number of female pupils in the heart of a great city.

Brady, J.:

Upon the argument of this case I was impressed with the conviction that the commissioners had erred, subsequent reflection and the combined opinion of my brethren have confirmed that view. The rule declared by them seems to be in entire harmony with the general system prevailing throughout this State; and they have so fully presented the case that I deem it unnecessary to add any thing to what they have said.

Ordered in accordance with opinion of Daniels, J.