THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT NO. 2, TOWN OF ONONDAGA, APPELLANT, v. JAMES W. HOOPER, School Commissioner, etc., Respondent.

*School commissioner — power of, to alter or divide union free school district — notice as to.*

A School Commissioner has power, under the laws of this State, to alter or divide a Union Free School District.

An order to that effect cannot, however, be made without giving to the trustees of the district a week's notice that at a time and place specified by him he will hear their objections to the proposed alteration.

CERTIORARI to review the action of the respondent, as school commissioner, in making an order dividing Union Free School District No. 2 of the town of Onondaga.

*D. Pratt*, for the relator.

*Fuller & Vann*, for the respondent.

MULLIN, P. J.:

This case comes before us on the return of James W. Hooper, School Commissioner of the second district of Onondaga county,

640 PEOPLE ex rel. B'D OF EDUCATION v. HOOPER.

Fourth Department, April Term, 1878.

to a writ of *certiorari* issued upon the application of the Board of Education of the Free School District No. 2 of the town of Onondaga.

An application was made to Commissioner Hooper to divide the Union Free School district, in the town of Onondaga, so as to set off from said district the territory embraced in the village of Danforth, in said town. The commissioner denied the application and an appeal was thereupon taken from the order of the commissioner to the superintendent of public instruction, and he reversed the order and directed the commissioner to proceed and divide the district in conformity to the prayer of the petition delivered to him for that purpose.

In obedience to this order the commissioner, on the 3d July, 1877, convened the board of trustees of said union school district for the purpose of obtaining their consent or refusal to the division of the district and they passed a resolution refusing their consent to the division of the district, five of the trustees voting in favor of the resolution and one against it. On the fifth July the commissioner made and filed with the town clerk an order dividing said union school district and forming a new district from the part set off, which was numbered No. 29, and included the village of Danforth. As the trustees of the union district refused their assent to the division the commissioner directed the division to take effect on the eighth October following. On the same day the commissioner served on the trustees of the union district school a notice that he had made and filed the order above-mentioned, and that he would meet the parties interested in said matter at the school-house in said district on the afternoon of July thirty-first to hear cause why his said order should not take effect, and suggesting to them to request the attendance, at the time and place specified, of the town clerk and supervisor.

After the decision of the appeal from the order of the commissioner refusing to divide said union district, the commissioner applied to the superintendent to reopen the case on said appeal on the ground that the action of the commissioner might have injuriously affected the rights of the trustees of said district. The application was refused, unless within ten days after notice of the decision a supplemental petition was filed in said department by said trustees

PEOPLE ex rel. B'D OF EDUCATION v. HOOPER. 641

FOURTH DEPARTMENT, APRIL TERM, 1878.

showing that their rights had been prejudiced, and giving reasons why a rehearing should be granted. This order was dated 5th July, 1877. A supplemental petition was presented to the department by the trustees of said district, but the prayer of it was refused.

The relator's counsel asks for reversal of the order dividing said school district on two grounds: First. Because the commissioner has no power to divide or alter a union free school district; and, second, that the order of the commissioner was made without giving to the trustees of said district an opportunity to be heard.

It is urged, in support of the first proposition, that the legislature has not conferred on commissioners of schools the power to divide or alter a union school district. That the power is limited to districts other than free school districts; and that the State superintendent has held that districts of the kind last named can be altered only by the legislature, and the legislature has on several occasions passed laws altering the free school districts.

Union free school districts may be formed in any school district in the State by the votes of the inhabitants, and several districts may be consolidated into a single district by the inhabitants of the several districts. When a single district is converted into a union free school district the only effect of the change is to elect a different body of men to manage its affairs, and to enable them to raise by tax, for the support of the school, larger sums than districts not organized as free schools are permitted to raise, and to enable them to organize an academical department. There is nothing in the provisions authorizing the attainment of these objects that interferes with the division of a free school district It would be exceedingly unwise to forbid the alteration of free school districts, as the same causes must, in the nature of things, operate upon them, rendering alterations necessary, that operate in other districts. Villages spring up in unlooked-for localities, rendering it necessary to erect new schoolhouses, to change their locations for the convenience of the inhabitants, and no reason is perceived why union free schools should be exempt from the operation of the same causes.

In districts formed of several districts or parts of districts the same considerations present themselves against the wisdom or propriety of prohibiting their alteration. Causes affecting unfavorably the common schools are constantly at work, rendering alterations in

642 PEOPLE ex rel. B'D OF EDUCATION v. HOOPER.

Fourth Department, April Term, 1878.

them indispensably necessary. Population changes by deaths and removals; the young grow older and leave the schools, and there may not be others to fill their places — as farmers grow richer they buy up the small farms, and the seller removes to the west. Streams on which mills were erected, and gave support to a considerable population, dry up, and the people look elsewhere for bread. No sane man can disregard these considerations; they must be provided for or public interests must suffer. It is true the legislature has not, in terms, authorized the alteration of union free school districts, nor was it necessary; the power is given in language sufficiently comprehensive to embrace them; and no reason can be assigned why they should not be subject to alteration as the other districts of the State.

Since the amendment of the Constitution forbidding the legislature to pass special laws in cases in which relief can be granted by general laws, school districts cannot be altered by legislation as we have no general laws on the subject. The opinion of the State superintendent is entitled to the highest respect, but superintendents differ in their views of the law as to the power to alter union school districts. The present superintendent has decided in this case that the power exists. I am constrained to concur with him.

By section 4 of title 6 of the Code of Public Instruction the commissioner, when he makes an order altering a school district, is required to give the trustees a week's notice that at a time and place specified by him he will hear their objections to the alteration. After the reversal of the commissioner's decision not to alter the district he served the notice required by the section last mentioned and designating the afternoon of the 31st July, 1877, as the time and the school-house of the district as the place for hearing the parties in opposition to said order. It does not appear that the commissioner or the trustees appeared at the time and place designated, nor that any thing was done in reference to it.

The trustees, as the representatives of the inhabitants, had the right to be heard before the order would become obligatory, and they could not be deprived of that right. Under the presumption of the due performance of official duty we might proceed on the assumption that the commissioner appeared at the time and place designated by him, but the papers before us forbid that assumption.

The commissioner, in his return, says that subsequently to the service of the notice of the order altering the district, on the trustees, and designating a time and place for hearing them in opposition to said order, it was withdrawn by direction of the State superintendent, so that it is conclusively proved that the trustees have never been given an opportunity to be heard as by law they should have been.

Neither the superintendent nor the commissioner could deprive the trustees of this statutory right. (*Fonda* v. *Canal Appraisers*, 1 Wend., 288 ; *The People ex rel. Citizens' Gas-light Co.* v. *The Board of Assessors*, 39 N. Y., 81 ; *People* v. *Bd. of Police,* id., 506.)

For this defect in the proceedings the order of the commissioner must be reversed.

The question in relation to the injunction is reserved, until it is definitely decided whether the district shall be divided.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Proceedings reversed.