Devlin agt. Platt.

---

## NEW YORK COMMON PLEAS.

In the matter of the application of DANIEL DEVLIN agt. NATHAN C. PLATT.

The supreme court, or any justice thereof, have no power or authority to issue a common law writ of *certiorari* to remove into that court a summary statutory proceeding *pending and undetermined* before a county judge, or any judge of the court of common pleas of the city and county of New York. It is only the *final* adjudications and determinations of such special officers and tribunals which can thus be removed.

*Any judge* of the court of common pleas of the city and county of New York, has jurisdiction and authority to entertain and determine an application under the statute, (1 *R. S.*, 124, § § 50, &c.,) of a public officer for the delivery over to him of the books and papers of his office.

In the absence of the *mayor* of the city of New York, the *president of the board of aldermen* of the city becomes the acting mayor, and mayor in fact for every purpose, and can exercise all his powers (*Laws* 1857, *p.* 874.) He can, therefore, with the consent of the board of aldermen, legally remove for cause, the *chamberlain* of the city from his office, and appoint another in his place.

The *chamberlain* of the city of New York being only chief of a bureau in a department of which the comptroller is head, the mayor of the city has no power of suspension of that officer—that power is confined to the *head of the department*.

*New York Special Term, January* 7, 1861.

APPLICATION of Daniel Devlin to procure the delivery to him of the books and papers appertaining to the office of chamberlain of the city of New York, claiming to have been duly appointed such chamberlin.

JOHN E. DEVELIN, *for applicant.*
JAMES R. WHITING, *opposed.*

HILTON, Judge. This proceeding has been instituted before me under 1 R. S., 124, sections 50, 51, 52, 53, on behalf of Daniel Devlin, claiming to have been duly appointed successor of Nathan C. Platt, as chamberlain of the city of New York, to procure the delivery of the books and papers appertaining to the office, and which are in his custody.

The sections of the statute referred to provide: That whenever a person shall be removed from public office, or his term shall expire, he shall, on demand, deliver over to his successor all the books and papers in his custody in any way appertaining to the office; and in case of neglect or refusal so to do, such successor may make application to any justice of the supreme court, or first judge of the county where the person so refusing shall reside, who, upon being satisfied by proper proofs that any such books or papers are withheld, shall grant an order directing such person to show cause, within a short and reasonable time, why he should not be compelled to deliver the same. At the time appointed the officer must proceed to inquire into the circumstances, when, if the person charged shall make oath that he has truly delivered over to his successor all such books and papers, further proceedings shall thereupon cease. But, if such oath is not made, and it appears that the books and papers are withheld, the judge before whom

Devlin agt. Platt.

the proceedings are had shall, by warrant, commit the person so withholding to the jail of the county, there to remain until he delivers over such books and papers, or is otherwise discharged according to law.

Having, upon sufficient proof, granted the order to show cause, at the time appointed the parties appeared, and the counsel for Mr. Platt, produced a writ of *certiorari*, issued by the supreme court in this district, granted at a special term thereof, held by Mr. Justice BARNARD, and claimed that by virtue of the writ all my powers were suspended and stayed, and this proceeding was removed into the supreme court.

My answer to this was, that although entertaining great respect for the tribunal from which the writ emanated, yet I did not consider it as possessing the power to arrest a proceeding thus instituted before me as a judge of the court of common pleas, prior to any final determination being made of the matters involved. That if the writ had the effect claimed, its operation would be to remove a statutory proceeding, intended to be summary before a judge sitting at chambers, into the supreme court at a general term—a tribunal possessing no power whatever to continue or complete it, or to give any relief to an application thus removed in its incipient state.

On reflection, I see no reason to change the views thus expressed. There cannot of course be a doubt as to the power of the supreme court to review, by the common law writ of *certiorari*, the final adjudications and determinations of all officers vested by the legislature with power to decide upon the property or rights of any citizen, who act in a summary manner, or in a new course different from that at common law. But, as its legitimate office is to review and correct the decisions and final determinations of inferior officers and tribunals, and not to invest the court with the right to exercise the powers thus conferred by statute on special officers and tribunals, it necessarily follows, that it

does not, before trial and final determination, divest the inferior jurisdiction of the right to terminate the proceeding instituted before it, nor does it withdraw from it the question to be tried. As was said in *Lyde* agt. *Noble*, (20 *John.* 83.) " When this *certiorari* was granted, there had been no order, judgment or trial; the magistrate had performed a ministerial act only; he had administered an oath and issued a summons. By allowing a *certiorari* the superior tribunal would be assuming an original jurisdiction instead of a power to review and correct;" and in that case, WOODWORTH, J., in delivering the opinion of the court, remarked : " I have not met with any case where, in a civil proceeding before an inferior magistrate who has express jurisdiction by statute, a *certiorari* has been held to lie to remove the issue, or question to be tried by the magistrate, to the supreme court;" and, indeed, he might have added, that according to the whole current of authorities from the earliest times to the present, the common law writ of *certiorari* never lies before judgment. Thus it is stated in *Bacon's Abr.* (*title certiorari*, 560,) that it is a good objection against granting the writ that issue is joined and venire awarded for trial in the court below. In *Rex* agt. *Nicolls*, (*Strange*, 1,228,) it was held that a verdict could not be removed by *certiorari*, from the sessions, before judgment. (*See also Comyn's Dig. title, certiorari.*) And in *Hains* agt. *Backus*, (4 *Wend.*, 213,) the late supreme court held to this view in a case in all respects analagous to the present. There, proceedings, under the statute relative to forcible entry and detainer, were instituted before a county judge, who, upon complaint made, had issued a precept to inquire into the matters in question. The parties appeared, but previous to the jury being called, a *certiorari*, removing the proceeding into the supreme court, was served upon the judge, who, thereupon, suspended proceedings and made return to the writ. On motion to quash, the court, per SAVAGE, Ch. J., held " that the *certiorari* was clearly pre-

mature, until inquisition found there was nothing to remove. The inquisition could not be found by the court, but could be obtained only in the method prescribed by the statute." (*See* 2, *R. S.*, 510.)

Many other cases might be cited, but it seems unnecessary. They all tend, however, to recognize the writ as performing the same office to inferior tribunals or jurisdictions, that a writ of error formerly did to inferior courts of record, and that in its office of removing final adjudications for review, it possesses all the characteristics of a writ of error. (*Stone* agt. *Mayor of N. Y.*, 25 *Wend.*, 167 ; *Morewood* agt. *Hollister*, PRATT, J., 2 *Selden*, 312 ; *Birdsall* agt. *Phillips*, 17 *Wend.*, 468, *and cases cited.*)

But a conclusive answer to the right claimed by the supreme court in respect to this proceeding is to be found in chap. 32, Laws 1844, p. 30, which declares that no writ of *habeas corpus* or *certiorari* shall be allowed, whereby any cause or proceeding may be removed before a final judgment in such cause, or before a final decision in such proceeding, from the court of common pleas into the supreme court,—except, that transitory actions may be removed, where a trial ought to be had elsewhere than in the city of New York. This statute, however, as I have already shown, was only declaratory of the existing law, but intended evidently to place the question beyond dispute.

On the argument, counsel for Mr. Platt insisted that it related only to proceedings in court; but when it is borne in mind that at the time this law was enacted, the court of common pleas existed only as a court of common law jurisdiction, possessing no equity-powers whatever, and therefore no right to entertain any special proceeding as a court, while on the other hand the judges were invested with almost innumerable powers in special statutory proceedings, it follows, I think, as an irresistible conclusion, that the law, to have any effect whatever, must have the interpretation that it relates to all such proceedings as by statute

were authorized to be instituted before any judge of the common pleas.  (*See also* 2 *R. S*, 389, § 2, 14, 16.)

Believing for the reasons stated that the writ thus served upon me, and which it seems was procured ex-parte, and upon that ground irregular (*see Monroe* agt. *Walker,* 6 *Cowen*, 397,) and might be treated as a nullity, (*Shotwell* agt. *Daniels*, 8 *John.*, 340.   *Graham's Prac.*, 559,) was not only improvidently issued, but unauthorized by law, I concluded to disregard it, and directed the proceeding before me to continue; whereupon it was further contended on behalf of Mr. Platt, that as I was not the first judge of the court of common pleas, or of the county, I was not possessed of any power or jurisdiction in the premises.   This objection, it is proper to say, was not accompanied by a reference to any statutes bearing upon the point; therefore for the information of the counsel I will briefly refer to the authorities under which each judge of the court is invested with all the powers of the first judge of the county, and can act as such in any statutory proceeding which may be instituted before such an officer.

I believe it will be conceded that the present court of common pleas may date its origin far beyond that of any judicial tribunal in this state, beginning under the reign of Governor Stuyvesant, in 1653, it was known as the court of burgomasters and schepens.  (*See history of the court, by Judge* DALY, 1 *E. D. Smith R.*, 24.)   With several changes, more particularly respecting its jurisdiction, it continued until the Dutch formally surrendered the colony of New Netherlands to the English, when, in 1674, it was convened as the mayor's court; and thus, though not without many alterations in its powers, &c., it remained down to 1821, (*see Laws, p.* 64,) when it was changed to that of " the court of common pleas, or county court of the city and county of New York," and a first judge was authorized to be appointed to preside in it.   In 1834, an associate judge was added, (*see Laws, ch.* 119,) and in 1819, (*see Laws, ch.* 116,) another;

each possessing, however, all the powers and jurisdictions of the first judge, in any suit or proceeding. The constitution of 1846, (article 6,) in reorganizing the judicial power of the state, did not interfere with the court as thus constituted, but on the contrary, by article 14, section 12, expressly declared that it should remain with its then powers and jurisdictions, until otherwise directed by the legislature, and that judges thereof should continue in office until the expiration of their terms, or until the legislature should otherwise direct. In 1847, (*see Laws, p.* 279,) the legislature provided for the election of three judges of the court, who were to select one of their number to be the first judge, and declared that the judges so elected should have and possess the same powers and perform the same duties that the first and assistant judges then possessed, had and performed. Language so plain as this would not seem to need a judicial interpretation, yet it was construed by the court of appeals, in *Renard* agt. *Hargous,* (3 *Kernan,* 259,) to continue in the present judges, not only all the powers and jurisdictions formerly possessed by the court of common pleas or county court, and by the first and associate judges thereof, but also the power of supreme court commissioner, which the judges theretofore possessed *virtute officii.*

This would seem, as it doubtless is, sufficient to justify me in entertaining jurisdiction of the present proceeding; but I may go still further. By the judiciary act of 1847, (*see Laws, p.* 330, §36,) the county courts in the several counties of this state, except in this city, were organized with all the powers of the former courts of common pleas, and the county judge was invested with all the powers and duties and jurisdiction of the former judges of such courts. The Code of Procedure in 1848, somewhat limited these powers of the county court, but continued them respecting all statutory proceedings like the present. Then, and as it would seem, further to place the powers and jurisdiction of

this court and its judges beyond a doubt, in 1854, (*see Laws,
ch.* 198,) a law was passed declaring that the present court
of common pleas had power and jurisdiction to exercise, in
this city and county, all the powers and jurisdictions then
or thereafter to be conferred upon or vested in the county
courts in their counties, and also the power and jurisdiction
which were vested in the court of common pleas prior to
the enactment of the Code of Procedure in 1848; all this
being in addition to the powers conferred upon us by the
Code, (section 33,) creating us a court of general jurisdic-
tion in all actions and proceedings, whether of law or equity,
within the county of New York.

Having for these reasons determined that I possessed the
power conferred by the statute upon the first judge of the
county, in respect to proceedings of this nature, I directed
the present controversy to proceed before me.   Counsel for
Mr. Platt then presented his affidavit denying that he had
been legally removed from the office of chamberlain, or
that Mr. Devlin had been legally appointed his successor.
In opposition to this, a record of the proceedings of the
board of aldermen upon the removal of Mr. Platt was pro-
duced, duly certified by the clerk of the common council,
(*Laws of* 1832, *ch.* 158, § 3,) showing that, during the year
1860, alderman William J. Peck was the president of the
board of aldermen; that on December 24th, the said Peck,
being then acting mayor of the city, removed Mr. Platt
from the office of chamberlain, for certain causes alleged,
and asked the board, to whom he addressed a written com-
munication on the subject, to concur in such removal.   It
appears that the board of aldermen concurred, and there-
upon a message was received from the acting mayor, Mr.
Peck, nominating Daniel Devlin to such office, and the board
consented thereto.   It was further shown to my satisfac-
tion, that on the 21st day of December, 1860, Hon. Fernando
Wood, the elected mayor, left the city and state of New
York, and did not return till the 27th of the month; during

all which time Mr. Peck attended at the mayor's office and acted as the mayor of the city; and that during the time he so acted, Mr. Wood was not present at the office. Opposed to the appointment thus made, Mr. Platt alleges that the mayor has suspended Mr. Devlin from the office of chamberlain.

Assuming that the proof and claim on behalf of Mr. Devlin is sufficiently denied by Mr. Platt, it becomes necessary for me to look into the charter of the city for the purpose of determining whether the removal and appointment thus made is in conformity with its provisions. (*Section* 1, *Laws* 1857, 874.) By section 17, it is declared that whenever there shall be a vacancy in the office of mayor, or whenever the mayor shall be absent from the city, or be prevented by sickness, or any other cause, from attending to the duties of his office, or shall be removed, as in the charter provided, the president of the board of aldermen shall act as mayor, and shall possess all the rights and powers of the mayor during the continuance of such vacancy, absence, or disability.

Section 22 provides for a department in the city government denominated the department of finance, the chief officer of which shall be called the comptroller of the city of New York. In this department there shall be a bureau for the reception and paying out of moneys belonging to the city, the chief officer of which bureau is called the chamberlain of the city of New York, who is required to keep certain books of account. This officer, by section 21, is required to be appointed by the mayor with the consent of the board of aldermen, and may be removed in the same manner with the heads of departments.

The power of removal is, by the same section given in these words : " The mayor shall have power to suspend for cause during any recess of the common council, and, by and with the consent of the board of aldermen, to remove any of the heads of departments, except the comptroller, and

the counsel to the corporation; which suspension, and the cause thereof, shall be communicated to the common council, if in session, and if not, then at the first meeting thereof. The board of aldermen shall have power without the consent of the mayor, by a vote of two-thirds of all the members elected, to remove any of the heads of departments for cause, other than the comptroller and the counsel to the corporation."

It seems to me that provisions so plain and unambiguous require no comment or explanation. In the absence of the mayor, the president of the board of aldermen becomes mayor in fact for every purpose, and can exercise all his powers. He may with the consent of the board of aldermen remove the chamberlain and appoint another in his place; but as this officer is only chief of a bureau in a department of which the comptroller is head, there is no power of suspension connected with him, that power being confined to the heads of departments.

The conclusion is thus forced upon my mind, unaccompanied by any doubt whatever, that, under the circumstances disclosed, Mr. Platt has been legally removed from the office of chamberlain, and Mr. Devlin has been duly appointed his successor, and as such, is entitled to have delivered to his custody all the books and papers in the possession of Mr. Platt appertaining to the office. (*The People* agt. *Stevens*, 5 *Hill*, 626.) I must, therefore, declare that it has been made to appear to me that such books and papers are withheld by Mr. Platt from Mr. Devlin; and under the provisions of the statutes respecting proceedings of this nature (§ 53,) I am constrained to issue a warrant committing Mr. Platt to the county jail, there to remain until he shall deliver up such books and papers, or be otherwise discharged according to law.