THE PEOPLE OF THE STATE OF NEW YORK, *ex rel.* SIDNEY P. NICHOLS, RESPONDENT, *v.* EDWARD COOPER, AS MAYOR OF THE CITY OF NEW YORK, APPELLANT.

*Removal of officers by the mayor of New York—section 25 of chapter 335 of 1873—a removal thereunder is reviewable on certiorari—certiorari may issue before the governor has acted upon the removal.*

Section 25 of chapter 335 of 1873,—the charter of the city of New York,—
provides that "the heads of all departments . . and all other persons,
whose appointment is in this section provided for, may be removed by the
mayor for cause, and after opportunity to be heard, subject, however,
before such removal shall take effect, to the approval of the governor,
expressed in writing. The mayor shall, in all cases, communicate to the
governor, in writing, his reasons for such removal."

*Held,* that the proceedings of the mayor in removing a person from his office,
in pursuance of the said section, were not final and conclusive, but were
reviewable by the court upon a *certiorari* issued upon the application of the
party aggrieved.

That the proceedings of the mayor in so removing an officer were reviewable
by *certiorari,* though at the time of the issuing of the writ, such removal
had not been either approved or disapproved by the governor, to whom the
record of the proceedings had before the mayor, had been by him trans-
mitted. (DAVIS, P. J., dissenting.)

APPEAL from a judgment reversing proceedings had before the
Mayor of New York, by which the relator was removed from his
office as one of the Police Commissioners of the said city.

On March 14, 1879, Edward Cooper, as Mayor of the city of
New York, sent to Sidney P. Nichols, then one of the Police Com-
missioners thereof, a communication in writing, stating the exist-
ence of certain facts, which, in the judgment of the Mayor,
warranted the removal of Mr. Nichols from office. In the
same communication the Mayor designated March 19 as
the time, and the Mayor's office as the place, at which Mr.
Nichols would have an opportunity to be heard upon the alleged
causes of removal. At the time appointed for the hearing the
Mayor refused to allow Mr. Nichols to appear by counsel or to
summon and cross-examine witnesses.

On April 5, the Mayor sent to the Governor a certificate, setting
forth certain matters stated to have been found by him, including
a finding of negligence on the part of Mr. Nichols in the discharge
of his official duties, and certifying that for cause, after opportu-
nity to be heard being afforded to Mr. Nichols, and after actually
hearing him, he had removed Mr. Nichols from the office of Police
Commissioner. In May Mr. Nichols, by his attorneys, notified the
Governor and the Mayor of his intention to apply, at a Special
Term of this court, to be held at Albany, in June, for a writ of cer-
tiorari to issue to both the Governor and the Mayor, and founded

his application upon an affidavit made by himself, which set forth all the proceedings of the Mayor upon which his removal was based. On June 2, the application for the writ was argued before Mr. Justice WESTBROOK, at Albany, by counsel for Mr. Nichols, and by the attorney-general on behalf of the Governor, and by counsel for the Mayor, and thereafter, and on August 12, Judge WESTBROOK granted the writ. On the same day, August 12, an order was entered in Albany county, directing the clerk of the court to issue a writ of certiorari directed to Edward Cooper, Mayor of the city of New York, and returnable before the Special Term of this court, at the court-house, in the city of New York, on the first Monday of September, thereafter. On August 30, an appeal was taken by the Mayor from the order allowing the writ, to the General Term of the Third Department, and on September 4, relator's counsel filed a stipulation to argue such appeal, at the October Term in the First District. On September 20, an Extraordinary General Term, appointed by the Governor, met, and, on application of respondent, granted an order to show cause why a writ of prohibition should not be issued by that court, prohibiting and restraining, among other things, the Special Term at Chambers from hearing and determining the questions arising upon the writ of certiorari granted by Justice WESTBROOK; and, on September 25, argument was had thereon, and the writ granted. (18 Hun, 530.)

At the October General Term the appeal from the order directing the writ to issue was heard, and the order affirmed. (19 Hun, 441.)

An appeal was taken from the order of the Extraordinary General Term granting the writ of prohibition, to the Court of Appeals, where it was reversed, in January, 1880.

Upon a hearing upon the return to the writ of certiorari had before Mr. Justice LAWRENCE at a Special Term in the First district, in February, the judgment from which this appeal was taken was directed to be entered.

*F. N. Bangs*, for the appellant. The existing provisions of the city charter, by their reasonable construction, and by necessary im-

plication, exclude the court from interfering with the process of removal while the subject is under the consideration of the Governor. (*Dousman* v. *St. Paul*, 22 Minn., 387 ; *Rex* v. *Sparrow*, 2 Durnford & East, 196, n. ; Matter of Eighteenth Street, 17 Abb. Pr., 264 ; *Bogert* v. *The Mayor*, 7 Cowen, 158 ; *Carr* v. *Tweedy*, Hempstead [Ark.], 287.) It is inconsistent with established rules of procedure, and beyond the limits of jurisdiction heretofore observed in certiorari cases, for the court to undertake a review of the process while it is incomplete, imperfect and inchoate ; and for that reason the writ should have been quashed. (*Murdock* v. *Phillips Academy*, 7 Pickering, 303 ; *State* v. *Medical Society*, 38 N. J. L., 377 ; *People* v. *Reddy*, 43 Barb., 539 ; *People* v. *Walter*, 68 N. Y., 407.) The writ issued prematurely, *i. e.*, at too early a stage of the proceedings. It should issue only to review final, effective and operative judgments, not intermediate or interlocutory rulings. It is not its object to correct errors in the admission, but in the application, of evidence. (*Lynde* v. *Noble*, 20 Johns., 80 ; *Haines* v. *Backus*, 4 Wend., 213 ; *Stone* y. *The Mayor*, 25 Id., 168 ; *People* v. *Pilot Board*, 37 Barb., 126 ; *People* v. *Supervisors*, 43 Id., 232 ; *People* v. *Reddy*, 43 Id., 539 ; *People* v. *Commissioners*, 30 N. Y., 72 ; *Cuyler* v. *Trustees*, 5 T. & C., 609.) The court can give no practical remedy in this case. It cannot award restitution. (*Bank of United States* v. *Bank of Washington*, 6 Peters, 8 ; *Stafford* v. *Stevens*, 2 Wend., 159 ; *Costar* v. *Peters*, 7 Robt., 386.)

*J. D. Townsend*, for the respondent.

BRADY, J. :

The questions affecting the proceeding which has culminated in the judgment from which this appeal is taken, have been considered by this court, and by the Court of Appeals. For reasons assigned by this court, a writ of prohibition was issued to the Special Term at Chambers to prevent the hearing, otherwise secured by law in that branch of the court, under the certiorari which was issued against the Mayor.

Upon the motion for the writ, various questions were presented for the consideration of the court, and among others, the propriety of continuing the proceeding by a certiorari against the Mayor alone, when by the statute, to which reference will hereafter be made, the approval of the Governor of the judgment of the Mayor was necessary to perfect the proceeding to which the certiorari related. The writ of prohibition having been granted, and an appeal having been taken to the Court of Appeals, the views presented to this court by the counsel for the Mayor were substantially reiterated in the latter court. By the judgment of that court, the writ of prohibition was quashed, and, although all the questions presented were not perhaps fully considered, nevertheless, it was distinctly said in that review, that the proceeding conducted by the Mayor for the removal of the respondent herein was judicial in its character; and, as a necessary consequence, was subject to review by a writ of certiorari issued to the Supreme Court in the exercise of its supervisory powers over inferior tribunals, and persons exercising judicial functions. (*Matter of Roberts*, 53 How. Pr., 200.) And on an appeal to this court from the order of Mr. Justice WESTBROOK granting the certiorari, in which it was again urged, on behalf of the Mayor, that the writ should not be sanctioned, because it was issued against him only, this court said, in rendering its decision, among other things: "We are of the opinion that a writ of certiorari may properly be sued out to review the action of the mayor in cases of this character. The allowance of such a writ rests in the sound discretion of the court to which application is made, and this court will not interfere with the exercise of such discretion in allowing the writ where it does not appear that it has been palpably abused. Without considering, or in any manner passing upon the merits of the case, which we think are not properly before us for that purpose, we dispose of the case upon the ground simply that a writ of certiorari would lie in such a case as this, and that the action of the court in granting the same was not an abuse of its discretion. In respect to the directing the return to be made, it is sufficient to say that a return was made and filed, and that, by the writ of prohibition heretofore granted in the case, the trial of the merits of the proceeding was sent to the proper tribunal," etc. The right, therefore,

of the respondent to proceed by certiorari in the manner adopted, seems to be settled, beyond all peradventure, both by this court and by the Court of Appeals. And such a judgment having been pronounced, it would seem also to follow, as a natural legal sequence, that whatever the respondent is entitled to in the form of a judgment should be granted without any further consideration of the supposed defect or error in issuing the writ prior to the judgment of approval to be expressed by the Governor under the statute referred to. In other words, that upon the certiorari, without reference to any question as to the manner or form in which it was issued, a judgment should be pronounced upon the merits of the controversy, which was done in the court below.

The appellant's counsel contends, nevertheless, that there are three open questions:

1. Whether the proceedings for the removal of Mr. Nichols, so far as the return discloses those proceedings, had reached such a stage as made them, at that stage, a proper subject of review by the court, conceding that they might reach such a stage as to become reviewable.

2. Whether it is consistent with the theory, scheme and purpose of existing legislation to hold that the proceedings in such a condition of them as is disclosed by the return should be stopped or arrested in order to undergo review in this court.

3. Whether any such record or transcript of the proceedings below, or any such judgment below, is brought before the court by the return, as enables this court to render any judgment, or to furnish to the relator any redress.

In reference to the first question it is deemed necessary only to say that the decision relative to the right of the respondent to the certiorari which was issued in his favor, determined that the proceedings had reached such a stage as made them properly the subject of review by this court. And this necessarily includes the second question, which differs slightly from the first.

The real point, however, presented by these several propositions is whether the respondent could, under the laws of this State, seek a review of the action of the Mayor adjudging his removal prior to the exercise of the right of approval as required by the statute.

This point, as already stated, has been substantially passed upon in this court, and in the Court of Appeals, but nevertheless a few suggestions may not be out of place. The statute of 1873 (Laws of 1873, 491, ch. 335, § 25), provides that the heads of all departments and all other persons whose appointment is in the statute provided for "may be removed by the Mayor for cause, and after opportunity to be heard, subject, however, before such removal shall take effect, to the approval of the Governor, expressed in writing. The Mayor shall, in all cases, communicate to the Governor, in writing, his reasons for such removal." The respondent based his application for the certiorari chiefly upon the ground that he was deprived of an opportunity to be heard. And the Court of Appeals, on the appeal from the order granting the writ of prohibition, very distinctly determined that he had been deprived of such opportunity, declaring that the proceeding in which it was sought to remove him must be instituted upon specific charges sufficient in their nature to warrant his removal, and that such charges must, unless admitted, be proven to be true; that he might cross-examine the witnesses, produced to support the charge, call other witnesses, and in this and other steps be represented by counsel. And further, that in no other way could a person sought to be removed have a due hearing or an opportunity to be heard—a condition which must be complied with before the power of removal can be exercised. The justice presiding at the Special Term, in an elaborate opinion, has demonstrated, and there can be no question of the accuracy of his conclusions on that subject, that the respondent was not afforded an opportunity to be heard, and his trial, or the investigation as to his conduct, was not carried on in the manner authorized by law—in the mode declared, as we have seen, by the Court of Appeals, in which it ought to have been conducted. He was not allowed the right of cross-examination, and he was denied the privilege of being represented by counsel. We do not consider it necessary to add anything to a proposition so plainly determined and so plainly just.

The learned counsel for the Mayor, who have displayed great zeal and ability in the proceedings, seem to be controlled by the

proposition that, under the statute, the action of the Mayor in proceedings like this under review, is in abeyance, and, therefore, incomplete and imperfect until the Governor's approval or disapproval is expressed, and that, under the statute, the record is necessarily before him, in his possession and under his control. The proposition cannot be maintained. The statute confers absolute power upon the Mayor to pronounce what may be regarded as an interlocutory judgment. It is the Mayor who may remove for cause; and it is he who shall give the opportunity to be heard; and it is he, who, after he shall have determined that the removal must be made, must communicate the result to the Governor. The statute does not require that he shall send the record or the proofs, but simply his reasons in writing for such removal. And his reasons may be a mere statement of the conclusions at which he has arrived, without stating the manner in which the proceeding was conducted, or the character of the proofs given to substantiate the causes upon which the removal is founded.

A proper estimate of the office of the writ of certiorari cannot, therefore fail to impress upon the legal mind the great importance of sustaining its application to a case like this. The judgment of the inferior tribunal has been pronounced, but is held in abeyance, as already suggested. It is true that it may be said that the statute works a stay of proceedings until the reasons for the judgment shall have been communicated to and approved by the Governor of the State, but the stay is only of the execution of the judgment, which remains in full force and effect nevertheless. The Governor, it must also be said, may not be advised by the reasons given, of the violations of law by which the removal was distinguished, as, for example in this case, and approve upon reasons expressed but developed by a departure from well established principles of law, and therefore by a violation of the rights of the person proceeded against. The approval rests only upon the judgment pronounced, and *the reasons assigned* for declaring it. If the judgment be one arrived at by disregarding well settled legal principles, and is therefore null and void, it should, on every principle of justice and equity, be arrested before it reaches the ultimate tribunal whose decree is to make it final and resolute.

In addition to this, it may be said, without any farther discussion of the question, that there may be doubt about the right of the courts to review the action of the executive in reference to a proceeding like this, after he shall have expressed his approval; and if it were determined ultimately that there was no such power then the person removed would be illegally, and therefore unjustly, deprived of his office.

No good reason has been shown; and no good reason occurs to my mind, why a certiorari should not issue in a case like this, and at a stage of the proceeding which it designed to affect. In the view that I take of this appeal, however, it is entirely unnecessary, in order to establish the right of the respondent to all the benefits of this proceeding which he has achieved, to show more than that this court and the Court of Appeals have decided that a certiorari is the proper form of procedure.

I entertain, therefore, no doubt that the judgment pronounced by the court below is correct, and that it should be affirmed.

BARRETT, J., concurred.

DAVIS, P. J., dissenting:

For the reasons hereinafter stated, I am unable to concur in the result reached by my brethren in this case. I think it not correct to assume that this court, on the appeal from the order granting the writ in this case, passed upon the question whether the proceedings for the removal of the relator had reached a stage at which they could be reviewed in this form. It was argued on that appeal, that the proceedings of the Mayor and Governor under the provisions of the charter, in removing heads of departments, were final and conclusive, and not the subject of review by any court. This court held to the contrary; and decided that such proceedings might be reviewed by certiorari; and upon that point alone the appeal was disposed of, leaving all questions relating to the merits, and to the efficacy of the writ in the particular case, to future consideration, and without comment. The court in a very brief opinion, said, "We are of the opinion that a writ of certiorari may properly be sued out to review the action of the Mayor in

cases of this character. The allowance of the writ rests in the sound discretion of the court to which application is made, and this court will not interfere with the exercise of such discretion in allowing the writ where it does not appear that it has been palpably abused. Without considering, or in any manner passing upon the merits of the case, which we think are not properly before us for that purpose, we dispose of the case simply on the ground that a certiorari will lie in such a case as this ; and that the action of the court in granting the same was not an abuse 'of its discretion." I am at a loss to see how it is possible from this opinion to say, that the court did any thing more than decide that a writ of certiorari would lie and was an appropriate course of procedure in such cases.

Nor was the question passed upon or considered by the Court of Appeals, on the decision of the appeal from the order of this court granting the writ of prohibition. That writ was directed to and prohibited a justice of the Supreme Court, then sitting at chambers for the purpose of hearing non-enumerated business and motions, from ordering a cause belonging to the enumerated calendar of the Special Term for the trial of issues of law and fact, and there to be tried according to the forms prescribed by statute, to be heard and tried before him at chambers upon such an order to show cause as he saw fit to direct. This court was of opinion that a justice had no power to make such an order, and thereby deprive the parties of such notice, form and mode of trial as the Legislature had seen fit to prescribe, and we thought, had secured to all parties. There was no question in that case, either upon the merits of the controversy or the sufficiency or validity of the writ of certiorari, before this court, and no such question was considered or passed upon by this court, however much talked about by counsel. On the appeal, the Court of Appeals decided that a justice at chambers had such power ; and that ruling disposed of the whole question before the court. It is not doubted that that decision became the law of the case, and for a time established the law in similar cases ; but it is a fit subject for gratulation that the flood of evil such a rule of law was likely to set loose in this city has been effectually sto ped, so far as writs of

certiorari are concerned, by an act of the Legislature. Section 2138 of the " Act supplemental to the Code of Civil Procedure" (passed May 6, 1880), declares that in such cases, "the cause must be heard at a General Term of the court. In the Supreme Court, it must be heard at a General Term held within the judicial department embracing the county where the writ was return-able." This act re-establishes the practice of the common law, which was never broken in upon in this State, until by a rule of the court, it was provided that such cases might be heard at a Special Term. It is true that the Court of Appeals having disposed of the question before it, the learned judge who pronounced the opinion gave expression, to some extent, of his views of the merits of this controversy—which are, of course, entitled to the respect due to his great learning and ability; but as the merits were not before that court, it is also due to him to say that he could not have intended to have decided finally questions of law or fact which had not then reached, and might never reach that high tribunal. But as to the question now under consideration, he expressly said: " Various other questions have been argued by the counsel for the respondent relating to the form of the writ of certiorari, and the effect of the order made by the Mayor, *whether it is interlocutory or final; but these need not be considered.* They relate to the procedure under the writ, and must be disposed of when that writ and the return thereto come before the court. *They have no relation to the order before us ; that, as its language shows,* is quite narrow." It was a mistake therefore, in the court below, as it is a mistake in the majority of this court, to hold that the question whether the order of the Mayor was " interlocutory or final," and could be reviewed on certiorari, had been determined, and is therefore *res adjudicata* in this court. I think the question is entirely an open one.

It is the well settled rule of law in this State, in such cases, that the order or judgment to be reviewed on common law certiorari must be complete and final before the writ will lie. This rule is now so well established that the Legislature has embodied it in section 2122 of the Code of Civil Procedure, by declaring that, " Except as otherwise expressly prescribed by

statute, a writ of certiorari cannot be issued: 1. "To review a determination, which does not *finally* determine the rights of the parties with respect to the matter to be reviewed." I accept this language as a terse and vigorous expression of the law, codified from the reports, which have long settled that "the writ is powerless to remove a civil proceeding before an inferior magistrate *exercising statutory jurisdiction*, until after a final adjudication in the proceeding." (5 Wait Pr., 457; *Lynde* v. *Noble*, 20 Johns., 80; *People* v. *Peabody*, 26 Barb., 437; *Devlin* v. *Platt*, 11 Abb. Pr., 398; *People* v. *Common Council of Utica*, 65 Barb., 1; *S. C.*, 45 How. Pr., 289.) Especially must this be the rule where, as in this case, the court has no power to proceed, and determine the question or issue brought up by the writ. In England it has been the practice on certiorari to remove matters pending in inferior courts to a superior court, and for the latter thereupon to proceed *de novo* to hear and determine the same; *but not in cases where by statute the power to do the act complained of was vested in some officer or body.*

The power to remove is given in this case to the Mayor alone with the approval of the Governor; and neither this court nor the Court of Appeals can exercise it under any circumstances, although we may review the proceedings by which a removal was made when they have become a final and effective determination.

In the light of the rule above mentioned, let us examine the mode of removal of heads of departments provided by the city charter. The mode is a single and simple one. It is made up of two things, or acts, which though independent of each other must coexist and concur before there can be any final determination, "which determines the rights of the parties with respect to the matter to be reviewed." The charter (Laws of 1873, p. 491, ch. 335, § 25) provides that "the heads of all departments . . . may be removed by the Mayor for cause, and after opportunity to be heard, subject however before such removal shall take effect, to the approval of the Governor expressed in writing. The Mayor shall in all cases communicate to the Governor in writing his reasons for such removal."

To me it seems too plain for argument that the action of the Mayor cannot be final when he determines to remove, until the "approval of the Governor is expressed in writing." His determination is purely interlocutory until another act over which he has no control gives to it finality. By it the officer is not and cannot be disturbed in his functions, nor suspended in his operations, nor relieved from his duties, nor deprived of his salary, nor affected *officially* in any degree. In the strictest and most literal, as well as in the broadest sense, the proceedings to remove, where nothing appears except the action of the Mayor, are inchoate, incomplete, and wholly ineffective, and they may exist in that form forever, and neither impair nor *legally* prejudice the status or functions of the officer. It neither does nor can it appear, while that condition remains, that any determination will ever be made that will be or become final and effective. The law cannot presume that the Governor will approve. On the contrary if the proceedings be erroneous, the legal presumption if any, is that he will not approve. His duties are not merely perfunctory. Before approving he may investigate, re-examine and re-try to whatever extent he chooses, not for the purpose of removing by any official energy or power of his own, but to inform his conscience or judgment before he approves or rejects. It is the Mayor's *determination* that removes; but it is his *approved determination.* His *unapproved determination* is legally speaking, as harmless and powerless as was the blank paper upon which it may have been written. Hence it appears that the Mayor's act is but one step in a process which requires two steps, and can never be final or effective without both. It is a necessary step it is true, but without the other it accomplishes nothing, for the process remains incomplete, and is but "the half of a scissors which will not cut." A certiorari will not lie to review the several steps in such a process, for the court is then called upon to review something which has no legal force to work injury to anyone. If the statute had declared that the Mayor's determination should have "*no effect*" until *filed* with the Governor, the point would have been very clear, and no one would have thought of suing out a certiorari till after such a filing; but the case in principle would have been no different, because the *approval* is as requisite to make the

Mayor's act *a final adjudication*, as would be the *filing* in the case supposed. The *completed* process may be reviewed, because the several steps that have made it complete have resulted in a final determination which does an injury to right or property, fit to be redressed. The writ of certiorari is not a *preventive* process, but a remedial one; and hence it does not lie to review each of the several steps that may culminate in a wrong, but only the completed and final determination that works the wrong. The confusion seems to spring from considering the Governor as an appellate tribunal appointed to review a final determination of the Mayor. He is nothing of the sort; he is only a constituent element of a system, which is nothing without him, as it is nothing without the Mayor, but, with both concurring, is complete and efficient. It is the very common thing, of a statute requiring two or more public officers to do several and separate acts, to consummate a specific result. The act of neither is such a final and complete thing, that it can be reviewed and reversed except by special statutory provision, because of its legal incapacity to effect anything. For instance, to bond a town, if the statute requires the consent of two thirds of the freeholders and the approval of the county judge. There is nothing to review by certiorari till both acts combine, for the consent is but a step, complete in itself, but of no legal effect, till the approval be obtained. Then it may be reviewed because it has become a completed process, affecting and perhaps injuring the rights of others. So also of proceedings in the various steps to lay out a highway. None of them is the subject of separate review, though it be in itself a completed part of the several things to be done to constitute a legal whole. It would be different if the determination of the Mayor had efficacy and force, *ex proprio vigore*, which remained operative unless, or until *disapproved* by the Governor. In that case it would be a final determination affecting substantial rights; but in the case before us, the statute in substance declares that the Mayor's proceedings have *no effect* till the Governor expresses his consent in writing.

I do not consider the question whether the Governor is a necessary party to a writ of certiorari, after he shall have approved: that is quite unnecessary. It is clear however, that the removal does not

become the Governor's act by his approval. It is still the Mayor's act and must stand or fall on the proceedings before him. It cannot be helped out by any investigation the Governor may set on foot to inform his conscience. When the Mayor's proceedings and determination have become final and effective by the approval of the Governor, the question whether they were without jurisdiction, or were taken in violation of law, is one quite independent of, and to no extent supported or impaired by the Governor's actions. In this case the return shows nothing beyond the unapproved determination of the Mayor, and the writ should therefore be dismissed as prematurely issued.

I do not feel constrained to wholly yield my judgment on the merits to what I conceive to have been the *obiter* expressions of the learned judge of the Court of Appeals. In my opinion, the charter provides a simple and effective mode for the removal of heads of departments by the Mayor, who is the representative of the whole people of the city. It was not, I think, intended to provide " a judicial proceeding," but a summary administrative one, by which the Mayor, after giving to the officer an " opportunity to be heard," could remove " for cause," with all the promptitude any exigency might require, provided his action received the approval of the Governor. The requirement of such approval was deemed a sufficient safeguard against inconsiderate, unjust or partisan action on the part of the Mayor. I have no doubt it was the intention of the Legislature that the Mayor might act upon his own knowledge, or observation of the misconduct or inefficiency of an officer, whenever they became in his judgment sufficient *cause*, and the officer should fail on opportunity given, to show a satisfactory excuse or explanation. This construction would secure to the city an efficient government, under which the heads of departments could be held to a responsibility that would make them the servants and not the masters, of the people. The contrary construction has worked infinite mischief under the false idea, that the title of an officer to his place is a matter superior in importance to the right of the people to have and enforce the performance of the duties of the office.

It is not necessary to discuss this part of the case any further ;

but I cannot forbear to say that, in my judgment, the return shows that the Mayor, in the removal of the relator (even if it be conceded that he acted under mistaken advice as to the law), did an act fully deserved, and which entitles him to the approbation of all good citizens. The return shows (what every citizen must well remember as *overt* facts) that through the inefficiency of the heads of the Police Department, the public streets had, to a large extent, become intolerable nuisances; that the Board of Commissioners were at deadlock, by a chronic and disgraceful quarrel among themselves, to such an extent that the offenses of members of the force could not be, and were not tried; that unfit men could not be removed, or fit men appointed; that measures demanded by the public interest could not be adopted; that the discipline of the police force was relaxed and its *morale* debauched; that all the streets were neglected; and to such an extent had these things gone, that one member of the board had introduced resolutions in that body reciting some of these facts, and requesting the Mayor " to investigate the department without delay," and had personally appealed to him to make such investigation.

The charter simply required that removals should be for cause, and " after opportunity to be heard." It necessarily makes the Mayor the actor, as accuser, witness, and trior, and imposes upon him the duty of determining. It provides no process to bring in the officer; none to summon witnesses or compel testimony; no power to administer oaths, to punish contempts, to preserve order. In short, it provides nothing but to present the " cause " or causes to the officer, and hear his denial or explanation, or excuse. To hold that these simple provisions create a court of which the Mayor is a judge, bound to sit as a court, to produce witnesses to sustain his alleged " causes ; " and to be sworn and cross-examined himself ; to hear the testimony of whatever interminable list of witnesses, the officer may choose to produce; and to listen to the objections, quibbles and arguments of lawyers, is to pervert the simple machinery of the statute into the cumbrous forms of a judicial tribunal, destitute of rules and powers, yet hampered by impediments and technicalities. Such a construction virtually prevents all removals, and reduces the scheme of the charter to an incongruous absurdity.

The Constitution in so far as it restrains or regulates the trial of actions and indictments in the organized courts of justice, has nothing to do with such a case. A person who takes office under the charter takes it subject to the provisions of the charter. It is his contract with the city, not only that he will faithfully perform the duties of the office, but that he will hold himself amenable to removal by the Mayor, under the provisions of the charter, if he fails to do so. In my opinion the Mayor acted in removing the relator within the scope of his powers; but if I err in that view I shall have an abiding conviction that whatever. flaws lawyers and courts may find in his action the common sense of justice and morality will approve it. I think the judgment of the Special Term should be reversed and the writ quashed.

. . Judgment affirmed.